WILLIAM C. KAHL, Superintendent Department of Public Instruction
In your letter of August 27, 1971, you ask the following question:
"Under state law, does a school district's negotiated agreement under 111.70 that by its terms is binding on the parties and by its terms establishes an effective date for a district salary schedule prior to August 15 take precedence over an individual employment contract under 118.21 that is dated after August 15 to correspond with that employee's first day of actual employment for the new school year?"
For the reasons hereinafter stated, it is my opinion that a collective bargaining agreement between a school district and its employe members negotiated and entered into within the purview of sec. 111.70, Stats., takes precedence over individual employment contracts entered into pursuant to sec. 118.21, Stats. (and sec. 118.22, Stats.). *Page 343 
The relationship between individual employment contracts and a collective bargaining agreement is perhaps best described in J. I. CaseCo. v. National Labor Relations Board (1944), 321 U.S. 332, 64 S.Ct. 516,88 L.ed. 762:
"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. Without pushing the analogy too far, the agreement may be likened to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules for service, which do not of themselves establish any relationships but which do govern the terms of the shipper or insurer or customer relationship whenever and with whomever it may be established . . . .
"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. This hiring may be by writing or by word of mouth or may be implied from conduct. In the sense of contracts of hiring, individual contracts between the employer and employee are not forbidden, but indeed are necessitated by the collective bargaining procedure.
"But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, *Page 344 
even if on his own he would yield to less favorable terms. The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates.
"* * *
"Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement. `The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices.' National Licorice Co. v. National Labor RelationsBoard (1940), 309 U.S. 350, 364, 60, S.Ct. 569, 84 L.ed. 799, (1939 Mem. Dec.) 308 U.S. 535, 60 S.Ct. 108, 84 L.ed. 451. Wherever private contracts conflict with its functions, they obviously must yield or the Act would be reduced to a futility.
"It is equally clear since the collective trade agreement is to serve the purpose contemplated by the Act, the individual contract cannot be effective as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement. The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group. Its benefits and advantages are open to every employee of the represented unit, whatever the type or terms of his pre-existing contract of employment."
I have quoted rather extensively from the J. I. Case decision since it is a landmark decision and represents the law of the land on the subject, and further because the factors and rationale leading to the decision are equally applicable to the relationship between individual employment contracts and *Page 345 
collective bargaining agreements entered into pursuant to sec. 111.70, Stats., Wisconsin's Municipal Employment Relations Law.
In Elmbrook Education Association v. Elmbrook Schools Joint CommonSchool District, etc., Decision No. 9163-C, dated December 30, 1970, the Wisconsin Employment Relations Commission ruled:
"Further, in harmony with the language of the Supreme Court as expressed in J. I. Case v. NLRB,[7] supra, the individual teacher contracts were subsidiary to the terms of the collective bargaining agreement reached between the Association and the School Board, and the individual teachers could not waive the benefits of said agreement, which benefits are open to every employe of the represented unit, whatever the type or terms of his pre-existing contract of employment. There was no evidence adduced herein that the individual teacher contracts proffered and anticipated to be signed prior to April 15, 1969, were proffered for no other reason that because the School Board had to comply with the requirements set forth in Secs. 118.21 and 118.22 of the Wisconsin Statutes. The record is lacking in any evidence to establish or infer, that the individual teacher contracts were proffered to the individual teachers to defeat or delay the procedures prescribed by Sec. 111.70
looking to collective bargaining, nor to exclude the contracting employe from a duly ascertained bargaining unit, nor to forestall bargaining or to limit or condition the terms of the collective agreement."
Thus, we have a determination made by the agency in Wisconsin that has jurisdiction to determine such matters, that is in conformity with J. I.Case, supra.
The pertinent portion of secs. 118.21 and 118.22, Stats., are quoted for convenient reference:
Section 118.21 (1), Stats.:
"(1) The school board shall contract in writing with qualified teachers. The contract, with a copy of the teacher's *Page 346 
authority to teach attached, shall be filed with the school district clerk. Such contract, in addition to fixing the teacher's wage, may provide for compensating the teacher for necessary travel expense in going to and from the schoolhouse at a rate not to exceed 6 cents per mile . . . ."
Section 118.22 (2), Stats.:
"(2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the following April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period of time as to which the teacher is then under a contract of employment with another board."
Turning now to sec. 111.70, Stats.:
School boards are included within the definition of municipal employer in sec. 111.70 (1) (a), Stats.
Section 111.70 (2), Stats., when read in connection with sec. 111.70
(4) (i), Stats., authorizes municipal employers and employes to collectively bargain on "questions of wages, hours, and conditions of employment."
Section 111.70 (4) (i), Stats., provides as follows:
"Agreements. Upon the completion of negotiations with a labor organization representing a majority of the employes in a collective bargaining unit, if a settlement is reached, the employer shall reduce the same to writing either in the *Page 347 
form of an ordinance, resolution or agreement. Such agreement may include a term for which it shall remain in effect not to exceed one year. Such agreements shall be binding on the parties only if express language to that effect is contained therein."
Our Supreme Court, in Local 1226 v. Rhinelander (1966), 35 Wis.2d 209,151 N.W.2d 30, held that collective bargaining contracts entered into in accordance with sec. 111.70 (4) (i), Stats., were legally enforceable.
We are dealing with two statutory provisions, secs. 118.21 and 118.22, Stats., considered together, and 111.70, Stats. While the Supreme Court did not decide the issue of the relationship between individual employment contracts under secs. 118.21 and 118.22 and collective bargaining agreements entered into under sec. 111.70, it did discuss the general relationship between the two statutory provisions inMuskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B. (1966), 35 Wis. 540,151 N.W.2d 617. In reversing the trial court, the Supreme Court said (loc. cite 35 Wis.2d 555): "One of the principal premises for the trial court's decision was that secs. [118.21 and 118.22], Stats., require the school board to contract individually with each teacher each year . . . ."
The court continued (loc. cite 35 Wis.2d 556):
"The provisions of sec. 111.70, Stats., apply to the authority of school districts to the same extent as the authority of other municipal governing bodies. Sec. 111.70 was enacted after secs. [118.21 and 118.22] and is presumed to have been enacted with a full knowledge of preexisting statutes. Construction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and any conflict should be reconciled if possible. [Footnote citations]"
Does sec. 111.70, Stats., completely obviate the provisions of secs.118.21 and 118.22, Stats.? In my opinion, it does not, and the two statutory provisions can be harmonized within the precepts of J. I.Case, and Elmbrook, supra.
First, although the terms of the collective bargaining agreement will control wages, hours and conditions of employment, *Page 348 
the act of hiring still must be accomplished. Sections 118.21 and 118.22, Stats., still provide the method for hiring or rehiring teachers.
Second: One principal reason for sec. 118.22, Stats., is to provide early knowledge to the school board what teaching staff it may expect the ensuing school year and what replacing will be required; and, in addition, to provide early knowledge to teachers whether they have a position the ensuing school year or whether they must seek a new contract elsewhere. These reasons survive sec. 111.70, Stats., and teachers and school districts still must execute individual employment contracts in accordance with the provisions of ch. 118, Stats., though the provisions of the individual contracts may not be repugnant to the terms and conditions of the collective bargaining agreement entered into under sec. 111.70.
The fact that the terms of the collective bargaining agreement may not be settled and reduced to a written binding contract at the time of the proffering of individual teacher contracts is immaterial. The school boards and teachers may offer and accept employment within provisions of secs. 118.21 and 118.22, Stats., subject to the terms of a collective bargaining agreement yet to be agreed upon by the parties. In fact, this is a common and widespread practice under sec. 118.22, which stems from the fact that in many instances, collective bargaining for the agreement for the ensuing school year is not completed by the April 15 deadline required in sec. 118.22.
However, even though the act of hiring occurred at a time different than the effective date of the collective bargaining agreement, since many school boards consider the work period to run from the beginning of the academic school year, many contracts are "dated" as of the beginning of the school year (late August or early September), even though the offer and acceptance occurred earlier and the collective bargaining a agreement already may have been negotiated and reduced to a binding written contract. There is no doubt, for the issue now under consideration, that the date affixed to the individual employment contract has no *Page 349 
legal significance. The terms of the contract are established as of the effective date of the collective bargaining agreement, although the act of hiring may have occurred earlier in point of time.
The salaries to be paid to an individual teacher are legally established as of the date the collective bargaining representative and the school district enter into a collective bargaining agreement. While the legally effective date of the collective bargaining agreement will vary according to the circumstances, we assume, without implying that in all cases it must, that its effective date is when the collective bargaining agreement is reduced to writing and formally accepted by the school board. This effective date is the point in time when the wage structure is legally established and legally enforceable under Wisconsin law.
The foregoing opinion is restricted solely to the question asked and to the specific facts your question assumes and does not directly treat any specific question which may arise under the federally imposed "wage-price freeze."
RWW:WHW
[7] "Where the primary issue involved was whether the Employer failed and refused to bargain in good faith as required by the existing federal labor relations statute."