Local 1226, Rhinelander City Employees, AFSCME, AFL–CIO and another, Appellants, v. City of Rhinelander, Respondent.

*April 13—June 6, 1967.*

For the appellants there was a brief by *Lawton & Cates* and *David F. Loeffler,* all of Madison, and oral argument by *Mr. Loeffler.*

For the respondent there was a brief and oral argument by *John W. Krueger,* city attorney.

HANLEY, J. On December 10, 1964, the plaintiff, Frances Bischoff, was discharged from her job as an administrative assistant in the water department of the city by order of the city mayor. At that time Mrs. Bischoff was a member of the union. The local union was the exclusive bargaining agent for city employees in several city departments, including the water department. The city and the union had a written collective-bargaining agreement which in Article X provided the following grievance procedure:

"Section 1. Both parties to this Agreement agree that the prompt and just settlement of all grievances is of mutual concern. Should differences arise between the Employer and the Union as to the meaning and application of the provisions of this agreement or as to any question relating to wages, hours, and conditions of employment an earnest effort shall be made to settle them promptly under the provisions of this Article.

"Section 2. Should an employee feel that his rights and privileges under this Agreement have been violated he shall first submit the problem to the Union Grievance Committee. If it is determined after investigation by the Union that a grievance does exist, it shall be processed in the manner described below:

". . .

"(e) If not settled as a result of the above procedures the issues involved shall be submitted to a Board of Arbitration.

"1. The Arbitration Board shall consist of three (3) members. One (1) member shall be chosen by the Employer, one (1) member shall be chosen by the Union and the third (3rd) member who will act as Chairman of the Board shall be chosen by the other two appointees.

"2. Should the two (2) members already selected fail to agree on a Chairman, the Chairman shall be appointed by the WERB.

"3. The Board of Arbitration shall, after hearing both sides of the controversy, hand down their decision in writing, within ten (10) days of their last meeting, to both parties to this Agreement and such decision shall be final and binding.

"4. Any cost incurred through the process of arbitration shall be shared equally by both parties to this Agreement."

Mrs. Bischoff felt that by her discharge her rights and privileges under the collective-bargaining agreement had been violated, and submitted the problem to the union grievance committee. The union determined that a grievance existed and processed Mrs. Bischoff's grievance through the first four steps of the Article X proceeding without solution satisfactory to both sides. Thereupon the union chose its member of the arbitration panel as

provided in Article X of the collective-bargaining agreement. The city refused to choose its member of the arbitration board and refused to follow the procedures set out in the agreement for choosing the third member chairman of the arbitration board.

Mrs. Bischoff and the union commenced this action for specific performance of the arbitration clause of the agreement for Mrs. Bischoff's grievance on her discharge. The city demurred upon the ground that the plaintiffs' complaint failed to state facts sufficient to constitute a cause of action. The trial court sustained the demurrer, basically upon the ground that the city had no statutory authority to enter into a binding arbitration agreement, and that therefore no cause of action will lie to specifically enforce such an agreement. From the judgment sustaining the demurrer, the plaintiffs appeal.

*Statutes Involved.*

Sec. 111.02 (2) : "The term 'employer' means a person who engages the services of an employe, and includes any person acting on behalf of an employer within the scope of his authority, express or implied, but shall not include the state or any political subdivision thereof, or any labor organization or anyone acting in behalf of such organization other than when it is acting as an employer in fact."

Sec. 111.02 (8) : "The term 'labor dispute' means any controversy between an employer and the majority of his employes in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives. Any organization with which either the employer or such majority is affiliated may be considered a party to the labor dispute."

Sec. 111.02 (10) : "The term 'board' means the Wisconsin employment relations board, as created by section 111.03."

Sec. 111.70 (1) (a) : " 'Municipal employer' means any city, county, village, town, metropolitan sewerage district,

school district or any other political subdivision of the state."

Sec. 111.70 (4) (i): *"Agreements.* Upon the completion of negotiations with a labor organization representing a majority of the employes in a collective bargaining unit, if a settlement is reached, the employer shall reduce the same to writing either in the form of an ordinance, resolution or agreement. Such agreement may include a term for which it shall remain in effect not to exceed one year. Such agreements shall be binding on the parties only if express language to that effect is contained therein."

Sec. 298.01: **"Arbitration clauses in contracts enforcible.** A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforcible save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to contracts between employers and employes, or between employers and associations of employes, except as provided in section 111.10 of the statutes."

The following issues are presented on this appeal:

1. Is the arbitration clause contained in the collective-bargaining agreement binding on the city?

2. If the clause is binding, is it specifically enforceable in the courts?

3. Is the question of whether Mrs. Bischoff was discharged for just cause an arbitrable issue under the agreement?

*1. Binding effect of the agreement to arbitrate.*

At the conclusion of the agreement, prior to the signatures of the officials of the city and the union, is the following provision:

"This Agreement shall be binding upon both the Employer and the Union."

The initial question is whether that part of the "agreement," Article X, which provides an arbitration procedure as a final step in the processing of grievances is binding upon the city.

We think it is binding. By sec. 111.70 (4) (i), Stats., the legislature has decreed that written collective-bargaining agreements between municipal employers and labor organizations "shall be binding" if they contain express language to that effect. Here we have such an agreement which contains such express language. Thus the contract comes exactly within the provision of the statute and is binding.

## 2. Specific enforceability of the agreement to arbitrate grievances.

In the leading case on the point of enforceability, *Local 1111 v. Allen-Bradley Co.* (1951), 259 Wis. 609, 49 N. W. (2d) 720, this court held that a collective-bargaining contract containing provisions for the arbitration of grievances was legal and in full force in Wisconsin, but that without some statutory basis the courts have no power to order an employer to perform its agreement to arbitrate. The basis of the court's opinion was that courts may specifically enforce agreements to arbitrate differences arising under an existing contract only under sec. 298.01, Stats. Since sec. 298.01 specifically does not apply to contracts between employers and employees, except as provided in sec. 111.10, the court reasoned that the union was not entitled to a judgment requiring the employer to arbitrate.

It should be noted that in *Local 1111 v. Allen-Bradley, supra,* the court was divided. Mr. Justice CURRIE, joined by Mr. Justice BROADFOOT, dissented on the grounds that Wisconsin courts are not so impotent as to be unable

to enforce valid and lawful agreements and that the declaratory judgment statute under which the action was brought authorized the court to grant supplementary relief when necessary and proper.

Mr. Justice CURRIE in his dissenting opinion, at page 618, stated:

"I cannot subscribe to the theory that the common law is an inflexible instrument which does not permit growth and adjustment to meet the social needs of the times. This court in the past has repudiated this very theory. Mr. Justice NELSON in his opinion in *Schwanke v. Garlt,* 219 Wis. 367, 371, 263 N. W. 176, declared:

" 'While we are at all times bound to uphold the constitution of this state, and to give due effect to its paramount provisions, we may not ignore the fact "that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions." *Dimick v. Schiedt,* 293 U. S. 474, 55 Sup. Ct. 296. To the same effect is *Funk v. United States,* 290 U. S. 371, 54 Sup. Ct. 212, 78 L. Ed. 369.' "

We believe the rule that the enforcement of an arbitration provision in a collective-bargaining agreement is not enforceable at common law should be repudiated.

The very purpose of grievance arbitration is to prevent individual problems from blossoming into labor disputes which cause strikes and lockouts and which require collective bargaining to restore peace and tranquility.

We now adopt the view expressed by Mr. Justice CURRIE in his dissent in *Local 1111, supra,* and conclude that it is illogical to hold in this case that the arbitration provisions are valid but the court is powerless to enforce them by compelling the city to arbitrate Mrs. Bischoff's grievance, especially in the light of the legislative enactment in sec. 111.70 (4) (i), Stats., that ". . . Such agreements shall be binding . . ."

The city and the trial court in its decision contend that the legislative history of sec. 111.70 (4), Stats., demonstrates that the legislature rejected the use of grievance arbitration as a means of settling disagreements which arise under collective-bargaining agreements with municipal employees. Actually, if the legislative history demonstrates anything, it is that the legislature rejected the idea of extending the jurisdiction to the Wisconsin employment relations board to handle or enforce arbitration agreements in municipal employment relations. The original draft of Bill 336, A., in the 1961 session of the legislature contained a sub. (c) to the proposed sec. 111.70 (4), which read:

"(c) *Board powers; submittal of award to municipal governing body.* The board may in arbitration proceedings in municipal labor disputes exercise the powers provided in s. 111.10. Any municipal employer, who provides by act of the governing body that a dispute concerning an interpretation or meaning of an existing ordinance, resolution or other document establishing wages, hours, or working conditions shall be settled by arbitration, shall submit such dispute to arbitration and shall be bound by the results of such arbitration. In all cases where an arbitration involves the settlement of a dispute over future wages, hours and working conditions the arbitration award shall be subject to final approval by the governing body."

Sub. (c) remained in the bill as first passed by the assembly. In the senate Bill 336, A., was altered by amendment 1, S., which struck out sub. (c) and inserted the third sentence to sub. (i) which provides:

"Such agreements shall be binding on the parties only if express language to that effect is contained therein."

Bill 336, A., as finally enacted by both houses and signed by the governor contained the changes of amendment 1, S.

The city asserts that in striking out the proposed sub. (c) the legislature manifested an intent that grievance

arbitration should not be used in municipal employment relations. To be successful this argument must clear several rather formidable hurdles. The first is that sub. (c) did not simply purport to grant the legislative stamp of approval to grievance arbitration in municipal employment relations. What sub. (c) would have done *is* grant to the WERB jurisdiction to exercise its sec. 111.10, Stats., powers over arbitration proceedings in municipal labor disputes. Thus it is reasonable to conclude the legislative design in deleting sub. (c) was to prevent further extension of the jurisdiction of a state agency, the WERB, over municipal employment relations. Amendment 1, S., does not indicate that the legislature intended that the power of municipalities to contract to arbitrate differences be diminished. This court has held that, unless prohibited by statute, a municipal corporation has the power to submit to arbitration any claims asserted by or against it, whether based on contract or on tort. *Madison v. Frank Lloyd Wright Foundation* (1963), 20 Wis. (2d) 361, 373, 122 N. W. (2d) 409. Wisconsin has no statute which prohibits municipal corporations from making agreements to arbitrate grievances arising under collective-bargaining agreements.

The second big hurdle to the city's argument is that amendment 1, S., did not simply remove the proposed sub. (c). It added the third sentence to sub. (i) which provided the binding effect of collective-bargaining agreements entered into by municipal employers. Since there is no statutory prohibition on the city entering into an agreement to arbitrate grievances, and since the general sub. (i) provides that the collective-bargaining agreements are binding if they so provide, the effect of amendment 1, S., must have been to provide that agreements to arbitrate grievances under collective-bargaining contracts are binding.

Under the above reasoning the conclusion must be that the city's agreement to arbitrate grievances is binding

and specifically enforceable in the courts, but that the legislature did not intend that the WERB have jurisdiction to enforce agreements to arbitrate in municipal collective-bargaining contracts.

### 3. Arbitrability of the discharge.

The city contends that even if Article X of the collective-bargaining agreement is binding upon the city, Mrs. Bischoff's discharge is not a grievance subject to arbitration under the terms of that article. The trial court did not consider this question, but the parties have argued it and it is a question of law which the court will consider in order to avoid additional appeals.

According to Article X of the agreement, the following matters are subject to the grievance procedure:

". . . differences arise between the Employer and the Union as to the meaning and application of the provisions of this agreement or as to any question relating to wages, hours, and conditions of employment . . ."

Article IV of the agreement provides the following with respect to probationary employees:

"Section 1. New employees without prior service shall be employed on a six (6) months probationary basis, and during said period may be discharged for cause without recourse through the Union."

Mrs. Bischoff was apparently a permanent employee who claims that this section of the agreement, at least by implication, protects her from discharge without cause, and that she was discharged without cause. It would thus seem that Mrs. Bischoff's grievance, processed by the union, can fairly be said to be a difference "as to the meaning and application of the provisions" of the agreement, if not a "question relating to wages, hours, and conditions of employment." Moreover, Mrs. Bischoff felt that her rights and privileges under the agreement were

violated by her discharge. The question of her discharge would thus seem to be arbitrable under sec. 2 of Article X, which in part provides:

"Should an employee feel that his rights and privileges under this Agreement have been violated he shall first submit the problem to the Union Grievance Committee. If it is determined after investigation by the Union that a grievance does exist it shall be processed in the manner described below: . . ."

*4. Arbitration is not an unlawful infringement on the legislative power of the city.*

The city has contended that to require the city to submit to binding arbitration is an unlawful infringement upon the legislative power of the city council and a violation of its home-rule powers. Yet in all of its arguments the city is talking about arbitration in the collective-bargaining context—arbitration to set the terms of a collective-bargaining agreement. Such is not this case, which involves arbitration to resolve a grievance arising under an existing agreement to which the city is a party. The legislature has passed statutes doubtless of statewide concern, which provide that the city's agreement to arbitrate grievances is binding on the city.

We conclude that the arbitration clause contained in the collective-bargaining agreement is binding upon the city and is specifically enforceable in the courts and that Mrs. Bischoff's discharge is an arbitrable issue under the agreement.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in conformity with the opinion.