RICHARDS, Appellant, v. BOARD OF EDUCATION, JOINT SCHOOL DISTRICT NO. 1, CITY OF SHEBOYGAN, TOWNS OF SHEBOYGAN, WILSON and MOSEL, SHEBOYGAN COUNTY; TOWN OF CENTERVILLE and VILLAGE OF CLEVELAND, MANITOWOC COUNTY, Respondent.*

*No. 303. Submitted under sec. (Rule) 251.54 March 29, 1973.— Decided May 1, 1973.*
(Also reported in 206 N. W. 2d 597.)

\* Motion for rehearing denied, without costs, on June 29, 1973.

446

448

For the appellant the cause was submitted on the brief of *Walter, Hopp & Hodson* of Sheboygan.

For the respondents the cause was submitted on the brief of *Clarence H. Mertz,* Sheboygan city attorney.

A brief amicus curiae was filed by *Goldberg, Previant & Uelman,* attorneys, and *John S. Williamson, Jr.,* of counsel, all of Milwaukee, for Wisconsin Federation of Teachers.

A brief was filed by *Walter, Hopp & Hodson,* of Sheboygan, for the appellant.

A brief was filed by *Clarence H. Mertz,* Sheboygan city attorney, for the respondents.

A separate brief amicus curiae was filed by each of the following: (a) *John A. Lawton, John H. Bowers, John C. Carlson, Bruce F. Ehlke,* and *Lawton & Cates,* all of Madison, for the Professional Firefighters of Wisconsin, the Wisconsin Council of County & Municipal Employees, the Wisconsin Education Association Council, and the Wisconsin Policemen's Protective Association; (b) *Richard Perry* and *Perry & First,* all of Milwaukee, for the Milwaukee Teachers Education Association; and (c) *Robert W. Warren,* attorney general, and *Charles D. Hoornstra,* assistant attorney general, for the Wisconsin Employment Relations Commission.

CONNOR T. HANSEN, J. The following issues are determinative of this appeal:

1. Is the defendant's refusal to relate the reasons for plaintiff's dismissal as basketball coach and to afford plaintiff a hearing thereon in violation of the due process clause of the fourteenth amendment of the Constitution of the United States?

2. Did the defendant violate state law in failing to give preliminary notice in writing to plaintiff, pursuant to sec. 118.22 (3), Stats., that his co-curricular assignment would not be renewed?

3. Does the master agreement between the defendant and the Sheboygan Education Association require a state-

ment of the reasons for dismissal and a hearing thereon?

This court has held that, in the absence of civil service regulations or properly authorized statutory rules governing labor relations, a municipal employee has no tenure in his public service. *Adamczyk v. Caledonia* (1971), 52 Wis. 2d 270, 190 N. W. 2d 137. In *Adamczyk, supra,* at page 274, this court stated:

"In the case of *State ex rel. Wattawa v. Manitowoc Public Library Board* (1949), 255 Wis. 492, 39 N. W. 2d 359, a city librarian sought to have her discharge vacated. This court pointed out:

" 'In the absence of tenure rights the right to hire carries the concomitant of the right to fire. This power may be exercised by the board arbitrarily and without cause. . . .' (P. 493)

"The court further stated:

" 'The board having power to discharge without cause, even though it be done unfairly and unreasonably, the courts have no right to interfere. The alternative writ must be quashed because the petition upon which it is based fails to state a cause of action.' (P. 494)

"In the case of *Richmond v. Lodi* (1938), 227 Wis. 23, 277 N. W. 620, the manager of the village waterworks brought an action for damages for an improper discharge. The court sustained the village's demurrer, concluding that the plaintiff had failed to state a cause of action. The court said:

" 'The commission is authorized to appoint the manager and fix his compensation. The word "appoint" completely expresses the power of the utility commission as to the manager's tenure. Under such provisions, the power to remove at pleasure is implied.' (P. 25)"

In *Adamczyk, supra,* this court further held that the municipality was empowered to discharge its employee without prior notice and without the requirement of a common-law hearing, and that the municipality was powerless to abrogate by contract its authority to terminate the services of an employee at its pleasure.

This case is in harmony with the traditional principle that governmental employment, in the absence of legislation, can be revoked at will of the appointing officer.[4]

As we view this case, the substantive and principal issue is whether the plaintiff, a teacher, who was offered his basic teaching contract, is entitled to notice and hearing for his nonretention to a nontenured co-curricular assignment for which he receives additional compensation.

*Due process.*

Plaintiff contends that defendant's refusal to relate the reasons for his dismissal as basketball coach and to extend a hearing to him was in violation of the due process clause of the fourteenth amendment of the United States Constitution.

It is our conclusion that this case is controlled by *Board of Regents v. Roth* (1972), 408 U. S. 564, 92 Sup. Ct. 2701, 33 L. Ed. 2d 548. The *Roth Case* concerned the nonretention of a nontenured faculty member in the Wisconsin State University system. It determined that a nontenured faculty member is not entitled to the procedural due process requirements encompassed by the fourteenth amendment. Mr. Justice STEWART, speaking for the United States Supreme Court, stated on pages 569–571:

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the

---

[4] *See: Cafeteria Workers v. McElroy* (1961), 367 U. S. 886, 896, 81 Sup. Ct. 1743, 6 L. Ed. 2d 1230; *Shelton v. Tucker* (1960), 364 U. S. 479, 486, 81 Sup. Ct. 247, 5 L. Ed. 2d 231; *Vitarelli v. Seaton* (1959), 359 U. S. 535, 539, 79 Sup. Ct. 968, 3 L. Ed. 2d 1012; *Jones v. Hopper* (10th Cir. 1969), 410 Fed. 2d 1323, 1329, certiorari denied, 397 U. S. 991, 90 Sup. Ct. 1111, 25 L. Ed. 2d 399; *Freeman v. Gould Special School Dist. of Lincoln County, Ark.* (8th Cir. 1969), 405 Fed. 2d 1153, 1159, certiorari denied, 396 U. S. 843, 90 Sup. Ct. 61, 24 L. Ed. 2d 93.

Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

"The District Court decided that procedural due process guarantees apply in this case by assessing and balancing the weights of the particular interests involved. It concluded that the respondent's interest in re-employment at Wisconsin State University—Oshkosh outweighed the University's interest in denying him re-employment summarily. 310 F. Supp., at 977–979. Undeniably, the respondent's re-employment prospects were of major concern to him—concern that we surely cannot say was insignificant. And a weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process. But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake. See *Morrissey v. Brewer, ante,* p. 471, at 481. We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property."

*Roth, supra,* further held that the terms "liberty" and "property" are among the great constitutional concepts purposely left to gather meaning from experience, and for that reason the "wooden" distinction between "rights" and "privileges," that once seemed to govern the application of procedural due process, has been fully and finally rejected.[5] In discussing whether the state's refusal to re-employ the teacher implicated interests in "liberty," the court, on pages 572 and 573, stated:

" 'While this Court has not attempted to define with exactness the liberty . . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations

[5] *Board of Regents v. Roth, supra,* at page 571.

of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.' *Meyer v. Nebraska*, 262 U. S. 390, 399. In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed. See, e. g., *Bolling v. Sharpe*, 347 U. S. 497, 499–500; *Stanley v. Illinois*, 405 U. S. 645.

"There might be cases in which a State refused to reemploy a person under such circumstances that interests in liberty would be implicated. But this is not such a case.

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau*, 400 U. S. 433, 437. *Wieman v. Updegraff*, 344 U. S. 183, 191; *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U. S. 123; *United States v. Lovett*, 328 U. S. 303, 316–317; *Peters v. Hobby*, 349 U. S. 331, 352 (DOUGLAS, J., concurring). See *Cafeteria Workers v. McElroy*, 367 U. S. 886, 898. In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's interest in his 'good name, reputation, honor, or integrity' is at stake."

Similarly, the defendant, in the instant case, made no charges against the plaintiff that might seriously damage his standing and association in his community. Speculation by other citizens in the community, as to why the plaintiff was not rehired, does not constitute harmful governmental action for which redress may be

secured under the due process clause of the fourteenth amendment.

The court in *Roth, supra,* further discussed the concept of "liberty" on pages 573 and 574:

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury. . . .' *Joint Anti-Fascist Refugee Committee v. McGrath, supra,* at 185 (JACKSON, J., concurring). See *Truax v. Raich,* 239 U. S. 33, 41. The Court has held, for example, that a State, in regulating eligibility for a type of professional employment, cannot foreclose a range of opportunities 'in a manner . . . that contravene[s] . . . Due Process,' *Schware v. Board of Bar Examiners,* 353 U. S. 232, 238, and, specifically, in a manner that denies the right to a full prior hearing. *Willner v. Committee on Character,* 373 U. S. 96, 103. See *Cafeteria Workers v. McElroy, supra,* at 898. In the present case, however, this principle does not come into play."

The defendant, in declining to rehire the plaintiff as basketball coach, has not, at this point, imposed on him a "stigma or other disability" that would destroy future employment opportunities as a coach. The record does not support an assumption of such harm. As stated in *Roth, supra,* at page 575, "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."

The court, in *Roth, supra,* at pages 576–578, discussed the protection afforded "property" by the fourteenth amendment in the following manner:

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.

". . .

". . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. . . .

". . . the respondent's 'property' interest in employment at Wisconsin State University—Oshkosh was created and defined by the terms of his appointment. . . .

". . . the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment."

The defendant, in declining to rehire the plaintiff as basketball coach, has not deprived the plaintiff of "liberty" or any "property" right secured by the fourteenth amendment. The fourteenth amendment's due process clause was not violated under the facts and circumstances of this case. The plaintiff did not have a constitutional right to a statement of specifications and a hearing on the defendant's decision not to retain him for this non-tenured assignment.

*Sec. 118.22, Stats.*

Plaintiff contends that the defendant violated state law in failing to send a preliminary notice in writing to plaintiff indicating that his coaching assignment would not be renewed for the 1971–72 school year.

Sec. 118.22, Stats., provides:

"**Renewal of teacher contracts.** (1) In this section:

"(a) 'Teacher' means any person who holds a teacher's certificate or license issued by the state superintendent or a classification status under the board of vocational, technical and adult education and whose legal employment requires such certificate, license or classification status, but does not include part-time teachers or teachers employed by any board of school directors in a city of the 1st class.

"(b) 'Board' means a school board, vocational, technical and adult education district board, board of control of a cooperative educational service agency or county handicapped children's education board, but does not include any board of school directors in a city of the 1st class.

"(2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the following April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period of time as to which the teacher is then under a contract of employment with another board.

"(3) At least 15 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew his contract."

Defendant argues that the plaintiff, in his role as a basketball coach, is not a "teacher" within the meaning of sec. 118.22 (1) (a), Stats., in that his regular employment as a coach does not require a teacher's certificate and, therefore, the minimal procedural safeguards afforded teachers in sec. 118.22, are inapplicable to the present contest. We agree.

It is undisputed that the plaintiff was a full-time teacher of driver education under contract with the defendant, and this contract was renewed at an increase in salary. His primary and basic employment was that of a teacher. This was the principal object of the contract as is further demonstrated by the amount of the allocation of additional compensation for the coaching assignment.

We would note that sec. 118.22 (3), Stats. (ch. 441, Laws of 1965), was enacted at the request of the Wisconsin Educational Association. As originally proposed, the law provided for notice setting forth complaints against the teacher upon "termination" of the contract. Amendment 1, A, deleted the specification requirement of the notice and substituted "nonrenewal" for "termination."

It is our determination that the provisions of sec. 118.22, Stats., as it is now written, are not applicable to co-curricular assignments and that they are not a part of the basic professional teaching contract.

*Master agreement.*

Plaintiff contends that the defendant violated the master agreement between it and the Sheboygan Education Association when it failed to show cause for plaintiff's dismissal and failed to provide a hearing thereon. The master agreement, *inter alia,* provides:

"*Board Functions*

"A. Nothing in this agreement shall interfere with the right of the employer in accordance with applicable laws, rules and regulations to:
"1. . . .
"2. . . .
"3. Suspend, demote, discharge or take other appropriate disciplinary action against the employee for just cause; to lay off employees in the event of lack of work or funds or under conditions where continuation of such work would be inefficient and non-productive.
". . .

"*Grievance Procedures*

"A. Definition
"1. . . .
"2. Dismissals shall be subject to the grievance procedure by being introduced to Step III of the procedure. They shall not be subject to final and binding arbitration but the decision rendered at Step III may be appealed through the provisions in State Statute 118.22, Section Three."

In *Adamczyk, supra,* the appellant, who had been discharged from his employment as a policeman, alleged that the town board had entered into a contract regulating the terms and conditions of employment for the employees of the town. He argued that the contract provided that the employees may be discharged for cause

only and that he was entitled to notice of termination and a hearing thereon. This court stated at pages 275 and 276:

". . . *Richmond v. Lodi, supra,* pointed out:
" 'The utility commission cannot surrender its power of removal at any time, reposed in it by the legislature, by appointing or by making a contract with plaintiff . . . .' (P. 26)
"The general rule is stated in 4 McQuillin, *Municipal Corporations* (3d ed.), pp. 303–306, sec. 12.249:
" 'Unless the law otherwise provides, if a municipal officer is appointed, or elected, as by a council or board, and no definite term is prescribed, he holds at the will or pleasure of his superior or the appointing or electing authority; hence, the power of removal may be exercised at any time by such agency. In such case the power of removal is regarded as incident to the power of appointment or election. Indeed, it has been announced that the law will write into an ordinance creating an office the power to terminate it or to remove the incumbent at will. It follows that power of removal may be exercised at any time, without notice, and without the necessity of providing formal procedure therefor; and such power cannot be divested or taken away, except by limiting the term; but power to do this must be expressly conferred by the charter or statute applicable.'
"A municipality, which is wholly a creature of legislatively delegated power, cannot by ordinance or contract bargain away that portion of the state's sovereignty which has been conferred upon it. 2 McQuillin, *Municipal Corporations* (3d ed.), p. 839, sec. 10.38, states the basic proposition:
" 'Unless authorized by statute or charter, a municipal corporation, in its public character as an agent of the state, cannot surrender, by contract or otherwise, any of its legislative and governmental functions and powers, including a partial surrender of such powers.'
"The town board was empowered to discharge the plaintiff from his employment without prior notice and without the requirement of a common-law hearing. To the extent that it limited the town's right to discharge, the purported contract was ineffective."

[The defendant, subject to sec. 118.22, Stats., was empowered to relieve the plaintiff of his coaching assignment without prior notice and the requirement of a common-law hearing. To the extent that the master agreement purports to limit this power, it is void.] *

Defendant has also urged that the plaintiff waived any rights he might have had by the execution of his teaching contract. However, since we conclude that there was no contravention of the plaintiff's rights of due process under the fourteenth amendment; that sec. 118.22, Stats., is not applicable to the instant case; and that the terms of the master agreement afforded the plaintiff no relief, we do not reach this question.

*By the Court.*—Judgment affirmed.

HEFFERNAN, J., took no part.

The following memorandum was filed on June 29, 1973.

PER CURIAM *(on motion for rehearing).* On Page 460 of our original opinion, it is stated that:

"The defendant, subject to sec. 118.22, Stats., was empowered to relieve the plaintiff of his coaching assignment without prior notice and the requirement of a common-law hearing. To the extent that the master agreement purports to limit this power, it is void."

This language is withdrawn and in its place the following substituted:

*Adamczyk, supra,* involved a personal employment contract rather than a collective bargaining agreement enacted in accordance with sec. 111.70, Stats.: "The Municipal Employment Relations Act." Prior to 1971,

---

* Withdrawn. *See* memorandum opinion on motion for rehearing, post, p. 460a.

municipal employers did not have to bargain collectively with employee unions. *La Crosse County Institution Employees v. WERC* (1971), 52 Wis. 2d 295, 190 N. W. 2d 204. However, sec. 111.70 (1) (d) was created by ch. 124, sec. 2, Laws of 1971.

In material part, sec. 111.70 (1) (d), Stats., provides:

" 'Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employees, to *meet and confer at reasonable times, in good faith with respect to wages, hours and conditions of employment with the intention of reaching an agreement,* or to resolve questions arising under such an agreement." (Emphasis added.)

Under the act, a school district is considered to be a "municipal employer," sec. 111.70 (1) (a), Stats., and this court has no difficulty in concluding that a grievance procedure established by a collective bargaining agreement, and relating to dismissals falls within the embrace of "wages, hours and conditions of employment," and that the conditions of such an agreement are binding on the parties. *See* our opinion in *Local 1226 v. Rhinelander* (1967), 35 Wis. 2d 209, 151 N. W. 2d 30.

This court is also of the opinion, however, that "dismissal" as that word is used in the master agreement means to remove from employment and not the failure to "renew" plaintiff's one-year contract under the same terms as it had contained before. We do not at this time render an opinion as to whether the failure to renew a co-curricular assignment could also be made subject to a grievance procedure under the terms of a collective bargaining agreement.

Motion for rehearing denied without costs.