**Hubert STEVENS, Plaintiff,**

v.

**JOINT SCHOOL DISTRICT NO. 1, TONY, ET AL., RUSK COUNTY, WISCONSIN, et al., Defendants.**

**No. 71–C–180.**

United States District Court, W. D. Wisconsin.

April 5, 1977.

---

**4.** See also, American Law Institute's Model Penal Code § 5.01 (Proposed Official Draft 1962).

under 42 U.S.C. § 1983, 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

In his amended complaint, plaintiff alleges that defendants deprived him of a property interest and liberty interest within the meaning of the Fourteenth Amendment when they did not renew his teaching contract. As relief, plaintiff seeks compensatory and punitive damages, and an order reinstating him to his teaching position with all of the employment rights and privileges he would have been entitled to had his contract been renewed.

On July 30, 1976, defendants filed a motion to dismiss the amended complaint for failure to state a claim. On September 29, 1976, an order was entered denying defendants' motion. On November 3, 1976, defendants filed a motion to reconsider the September 29, 1976 order. On December 30, 1976, an order was entered denying defendants' motion to reconsider. By order entered January 3, 1977, the court, on its own motion, vacated the opinion and order of December 30, 1976, and invited briefs from counsel on the implication for this case of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

Defendant's motion for reconsideration of the September 29, 1976 order is presently before this court. For the purpose of this motion, I take as true the allegations of the amended complaint, construed liberally to the plaintiff. Those allegations are summarized in the following section of this opinion headed "Facts."

Bruce M. Davey, Lawton & Cates, Madison, Wis., for plaintiff.

Ronald J. Kotnik, Ela, Esch, Hart & Clark, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil proceeding for injunctive and monetary relief. Jurisdiction is present

*Facts*

Plaintiff is a school teacher by profession. He is certified and has been engaged in the teaching profession since 1954. He was employed as a school teacher by the Joint School District No. 1, Village of Tony, et al., from 1966 to 1970.

Before accepting employment in defendant district, plaintiff was led to believe by

agents of the district and the defendant Board of Education that although teachers entered into one-year contracts with the district, it was the policy and practice of the district to retain a teacher unless good cause were shown warranting the teacher's dismissal. Partly in reliance on this representation, plaintiff accepted employment in defendant district.

Prior to the time that plaintiff was employed by the school district, the Board of Education adopted a written policy which provided that teachers employed by the district would have probationary status for three years. If a teacher's work during this three-year period was not satisfactory, the teacher's employment could be terminated. The Board's policy further provided that a teacher who completed the initial three-year probationary period could be placed on probation if his or her work became unsatisfactory thereafter. This policy was in effect during the time that plaintiff was employed by defendant district.

In a letter dated January 6, 1970, plaintiff was informed that the Board of Education was placing him "on probation for the balance of the 1969–70 school year as recommended by the district administrator, Marvin E. Nelson, and high school principal, John Andrews." On January 14, 1970, the Board denied plaintiff's request for an opportunity to appear before it to discuss the Board's action in placing him on probation. On January 26, 1970, the Board voted to notify plaintiff that it was considering not renewing his contract for the 1970–71 school year.

On February 12, 1970, plaintiff attended a private conference with members of the Board. At this conference, the district administrator, Marvin E. Nelson, charged plaintiff with lack of rapport with his students, and the high school principal, John Andrews, charged plaintiff with lack of good judgment and common sense.

On March 11, 1970, the Board voted not to renew plaintiff's teaching contract for the 1970–71 school year. Plaintiff was notified of this decision by letter dated March 12, 1970.

On April 24, 1970, counsel for plaintiff demanded that the Board furnish plaintiff with a written statement of the specific reasons or charges considered by the Board in its decision not to renew plaintiff's contract. On May 12, 1970, plaintiff was provided with a written document entitled "Specification of Charges." These charges included:

"  .   .   . 1. Failing to assume the responsibility of classroom disciplinary problems.  .   .   .

2. Frequently leaving classroom unsupervised for 5–10 minute intervals while escorting students, who committed minor rule infractions, to the high school principal's office.  .   .   .

3. Disciplining or attempting to discipline students unfairly and in a manner which is undignified and disruptive to classroom atmosphere.  .   .   .

4. Ridicule of and relationship with students has had a detrimental effect on the high school science program.  .   .

5. Ridicule of and relationship with students has had a detrimental effect on the education of students.  .   .   .

6. Ridicule of and relationship with students has had a detrimental effect on the parent-teacher relationship.  .   .   .

7. Ridicule of and relationship with students has had a detrimental effect on relationship with fellow teachers.  .   ."

Upon receipt of this document, plaintiff's counsel requested a hearing before a third party. The Board of Education denied the request for a third-party hearing examiner. Hearings were held before the Board on July 10 and 21, August 18 and September 25, 1970. On February 10, 1971, the Board issued a written memorandum decision not to renew plaintiff's teaching contract.

The "Specification of Charges" and other documents pertinent to those charges have been made a part of the personnel file which is maintained by defendant school district. Plaintiff's personnel file is made available to other school districts. The

charges made by defendant district against plaintiff have been made known to school districts at which plaintiff applied for employment after his teaching contract with defendant district was not renewed. As a result of these charges, plaintiff has been denied employment opportunities which otherwise would have been open to him.

## Opinion

### I. Property Interest

A. Supreme Court and United States Court of Appeals decisions

Plaintiff contends that the policy adopted by defendant Board of Education regarding the employment and reemployment of teachers was in fact and in law a *de facto* tenure program within the meaning of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), by virtue of which plaintiff had an enforceable expectancy of continued employment in defendant school district. In *Perry,* the Supreme Court stated that the absence of an explicit tenure provision in one's contract ". . . may not always foreclose the possibility that a teacher has a 'property' interest in reemployment." 408 U.S. at 601, 92 S.Ct. at 2699. The Court held that a person could possess an interest in continued employment created by some other sort of contractual provision, express or implied, of which he or she could not be deprived constitutionally without being afforded due process. The Court further held that "subjective expectancy" of future employment is not sufficient to invoke constitutional protections, but that an employee claiming a protected property interest ". . . must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.'" 408 U.S. at 603, 92 S.Ct. at 2700.

*Perry v. Sindermann* was only one in a series of cases in which the Supreme Court postulated that government action "entitling" an individual to goods, services or other benefits can create interests protected

by the due process clause.[1] The Court's discussion in *Perry* suggested that a broad inquiry into the legitimacy of expectations was required in cases such as this, in which a deprivation of property without due process is alleged to have taken place, and that an expectation of continued employment which was based on a pattern of practice could be sufficient to invoke due process protections. It was on the basis of *Perry* that I previously denied defendants' motion to dismiss.

Three recent Supreme Court cases, *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) have significantly narrowed the *Perry* holding. In these cases, the Court has focused on positive state enactments, rather than on less formal indications that an enforceable interest has been created.

In *Paul v. Davis,* Edward Davis brought an action under 42 U.S.C. § 1983, challenging the distribution by Louisville, Kentucky police officials of a flyer containing photographs of persons identified as "Active Shoplifters." Davis alleged that his inclusion in the flyer inhibited him from entering business establishments and impaired his employment opportunities. In its opinion, the Court stated that property and liberty interests attain "constitutional status" by virtue of the fact that they are included in the Bill of Rights, or "that they have been initially recognized and protected by state law." 424 U.S. at 710, 96 S.Ct. at 1165. The Court concluded that reputation, standing alone, is not a constitutionally protected interest, and that since Kentucky statutes do not furnish any "legal guarantee of present enjoyment of reputation" Davis' interest in his reputation was unprotected by the Fourteenth Amendment.

The Court's focus on positive state enactments as the source of constitutionally protected interests was further defined in *Bishop v. Wood,* supra. In that case, a

1. See, e. g. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v.* *Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

former police officer challenged his discharge from employment without a hearing. The police officer, Bishop, claimed that since a city ordinance classified him as a "permanent employee" he had a constitutional right to a pretermination hearing, and that since he had not been given such a hearing, he had been deprived of a property interest and a liberty interest without due process of law. In its discussion of property interests, the Court stated:

"A property interest in employment can, of course, be created by ordinance or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." 426 U.S. at 344, 96 S.Ct. at 2077.

The majority concluded that under North Carolina law, as set forth in a state supreme court decision, "an enforceable expectation of continued employment in that state can exist only if the employer, by statute or contract, has actually granted some form of guarantee." *Id.*, at 345, 96 S.Ct. at 2078. The Court held that although the ordinance defining the terms of Bishop's employment could have been read to provide such a guarantee, it would adopt the district court's conclusion that no guarantee was provided and that city employees served at the complete discretion of the city.

Finally, in *Meachum v. Fano*, supra, the Court again focused on positive state enactments as the source of protected interests. The petitioners in *Meachum* were state prisoners who had been transferred, without a hearing, from a Massachusetts medium security institution to another correctional facility with less favorable living conditions. The Court held that such a transfer is not a deprivation of liberty requiring due process as long as "state law or practice" does not condition such action on proof of serious misconduct or the occurrence of other events. Despite its opening reference to "state practice" the Court gave no weight to the practice and norms of the correctional institution from which the petitioners had been transferred, or to the general expectations of the inmates. Instead, the Court defined the extent of the petitioners' liberty interest solely on the basis of what could be expected from the words of the Massachusetts transfer statutes. The Court found that since Massachusetts statutes provided no standards governing the transfer of prisoners, leaving transfer decisions completely to the discretion of prison officials, the petitioners had not been deprived of any constitutionally protected interest.

In *Paul v. Davis, Bishop v. Wood,* and *Meachum v. Fano,* the Supreme Court defined property and liberty interests solely by reference to formal state enactments and judicial interpretations of these enactments. The Court did not make any examination of "state practice" or of the expectations which could reasonably be derived from the relevant state law and practice. The Court's analysis in these three cases is thus in sharp contrast with the analysis outlined in *Perry v. Sindermann.* However, since the Court has not explicitly overruled *Perry,* it appears to retain some validity. Although the Court in the three cases discussed above focused on positive state law, the Court did not hold that only interests affirmatively created by state law are constitutionally protected. Therefore, on the basis of *Paul, Bishop* and *Meachum,* it could still be argued that as long as state law does not explicitly state that an expectancy based on a pattern of practice cannot be an enforceable property interest, a pattern of practice could still provide the basis for a property interest. However, in a recent decision, *Confederation of Police v. City of Chicago,* 547 F.2d 375 (7th Cir. 1977), the Seventh Circuit Court of Appeals has effectively foreclosed such an argument.

In *Confederation,* employees of the Chicago Police Department challenged the failure of the police department to supply a grievance procedure or to allow collective bargaining with respect to adverse action short of discharge. The district court dismissed the complaint. The court of appeals reversed, on the ground that a Chicago patrol officer has a property interest in the conditions of his employment. The Su-

preme Court vacated the court of appeals' judgment, and remanded the case for further consideration in light of *Meachum v. Fano* and *Bishop v. Wood.* On remand, the court of appeals held that its previous decision had been incorrect. In the course of its opinion, the court of appeals set forth a very strict interpretation of *Bishop* and *Paul v. Davis.* The court stated that in *Bishop* the Supreme Court had "held that the existence of a property interest in public employment cognizable under the due process clause depends on whether state law has affirmatively created an expectation that a particular employment relationship will continue unless certain defined events occur." 547 F.2d at 376. The court also referred to the Supreme Court's holding in *Paul v. Davis*: "a property interest attains constitutional status by virtue of initial recognition and protection by state law." The court went on to state that there was no Illinois law "whether from a statutory, regulatory or judicial source" that protects a Chicago patrol officer from adverse action short of discharge, and it concluded that "[a]bsent affirmative recognition in Illinois law of an entitlement to particular job conditions, plaintiff's due process claim must fail. . . ." *Id.*

■ The conclusion to be drawn from the court of appeals' interpretation of *Bishop v. Wood* and *Paul v. Davis* is that an expectation of continued employment grounded on a pattern of practice may not necessarily enjoy the procedural protection afforded by the due process clause of the Fourteenth Amendment, even if the state law does not explicitly declare that such an expectation is not a property interest. According to *Confederation,* an expectation of continued employment grounded on a pattern of practice is constitutionally protected only if the state law affirmatively recognizes such an expectation. Thus, an examination of the enforceability of an alleged property interest must be directed at the existence of "affirmative recognition" in Wisconsin law—either through formal state enactments, or through judicial interpretation of relevant enactments.

## B. Wisconsin law

Wis.Stat. § 118.21 (1969) authorizes a board of education to enter into personal employment contracts with teachers. According to Wis.Stat. § 118.22 (1969), which sets forth the procedures for renewal of teacher contracts, these contracts are renewable annually. Boards of Education are not specifically authorized by statute to incorporate tenure provisions into individual contracts.

Two Wisconsin Supreme Court cases, *Adamczyk v. Town of Caledonia,* 52 Wis.2d 270, 190 N.W.2d 137 (1971) and *Richards v. Board of Education,* 58 Wis.2d 444, 206 N.W.2d 597 (1973), have dealt with the enforceability of nonstatutory tenure provisions in municipal contracts. In *Adamczyk* the Wisconsin court considered the employment contract of a policeman employed by the Town of Caledonia. The policeman alleged that his contract had been summarily terminated even though it provided that an employee could be terminated only for cause, and that pursuant to the contract he was entitled to notice of termination and a hearing. The defendant demurred to the complaint on the ground that the complaint failed to state facts sufficient to constitute a cause of action. In its opinion, the Wisconsin Supreme Court noted that there were no statutory provisions which restricted the power of the town board to deal with its employees or officers. The court held:

"In the absence of civil service regulations or properly authorized statutory rules governing labor relations, a municipal employee has no tenure in his public service. . . .

The town board was empowered to discharge the plaintiff from his employment without prior notice and without the requirement of a common law hearing. To the extent that it limited the town's right to discharge, the purported contract was ineffective." 52 Wis.2d at 273–4, 276, 190 N.W.2d at 139.

■ Thus, according to the court's holding in *Adamczyk,* a board of education in Wisconsin lacks the power to enter into an

individual contract with a teacher which provides that the term of employment will extend until cause for termination arises. In effect, the board cannot, in a personal contract, give a teacher the right to notice and a hearing which accompanies tenure.

In *Richards v. Board of Education*, supra, the Wisconsin Supreme Court applied the rationale of *Adamczyk* to the claim of a public school teacher. The teacher contended that the school board had violated a collective bargaining agreement, negotiated pursuant to Wis.Stat. § 111.70 (1971), when it failed to demonstrate "cause" for the nonrenewal of his coaching duties. Citing *Adamczyk*, the court disposed of the claim by stating:

> "The defendant, subject to sec. 118.22, Stats., was empowered to relieve the plaintiff of his coaching assignment without prior notice and the requirement of a common-law hearing. To the extent that the master agreement purports to limit this power, it is void." 58 Wis.2d at 460a, 206 N.W.2d 597.

On rehearing, the court noted the existence of the municipal employer's duty to bargain collectively under Wis.Stat. § 111.-70(1)(d) (1971), and the fact that it had previously held that conditions of collective bargaining agreements were binding upon the parties thereto. The court withdrew the language quoted above, and distinguished *Adamczyk* as follows:

> "*Adamczyk, supra*, involved a personal employment contract rather than a collective bargaining agreement enacted in accordance with sec. 111.70 . . . this court has no difficulty in concluding . . . that the conditions of such an agreement are binding upon the parties. . . ." 58 Wis.2d at 460a, 460b, 206 N.W.2d at 605, 606.

█ Accordingly, as affirmatively set forth in Wisconsin statutes and in judicial pronouncements, the law in Wisconsin appears to be that in the absence of a civil service regulation, a contractual right embodied in a binding collective bargaining agreement, or other "properly authorized statutory rules governing labor relations," *Adamczyk v. Town of Caledonia*, supra, 52 Wis.2d at 276, 190 N.W.2d at 139, a public school teacher has no tenure in his or her employment. A school board cannot unilaterally limit its right not to renew a teacher's contract. Furthermore, since the Wisconsin court has not affirmatively stated that tenure rights can be created pursuant to a pattern of practice, or pursuant to a collective bargaining agreement created by implication, an expectancy of continued employment based on a pattern of practice, or on a collective bargaining agreement created by implication, is not protected by the Fourteenth Amendment.

Plaintiff argues that pursuant to *Richards*, Wis.Stat. § 111.70 is statutory authorization for policies creating an expectation of continued employment, and pursuant to § 111.70 defendant district, as a municipal employer, had the authority to adopt binding policies regarding the employment and reemployment of teachers. I cannot agree. In *Richards* the Wisconsin Supreme Court did not state that any policy promulgated by a municipal employer could serve as the basis for an enforceable property interest. The court said only that provisions in a collective bargaining agreement, enacted in accordance with § 111.70, would be enforceable.

Thus, the issue in this case is whether the Board policies on which plaintiff based his expectation of continued employment were authorized by civil service regulations or by a binding collective bargaining agreement. Plaintiff has not cited, and I have been unable to find, any regulation which is relevant to this issue. Furthermore, there is nothing in plaintiff's amended complaint which indicates that the Board "policy" which allegedly provided tenure was adopted pursuant to negotiations between the Board and the teachers, and that it was part of a collective bargaining agreement enacted in accordance with § 111.70.[2]

---

2. Prior to 1971, municipal employers were not required to bargain collectively with employee unions. *Richards v. Board of Education*, 58 Wis.2d at 460b, 206 N.W.2d 597.

Thus, plaintiff has not alleged the deprivation of a property interest protected by the Fourteenth Amendment.

## II. Liberty Interest

Plaintiff also alleges that defendants' action in not renewing his teaching contract deprived him of an interest in liberty protected by the Fourteenth Amendment.

■ In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court concluded that a person is deprived of liberty when the state's refusal to rehire him damages his standing and associations in his community, or imposes a "stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. The Court held that a person is not deprived of liberty when he simply is not retained in one position but remains as free as before to seek another. *Id.* at 575, 92 S.Ct. 2701. In *Bishop v. Wood*, supra, the Court held that "this same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." 426 U.S. at 348, 96 S.Ct. at 2079. Most recently, in *Codd v. Velger*, —— U.S. ——, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), the Supreme Court held that to state a claim that a liberty interest has been violated by the manner in which an employment was terminated, the terminated employee must allege in his or complaint that the charges on which the termination was allegedly based were false. Thus, in order to state a claim of deprivation of liberty, it must reasonably appear from the amended complaint (1) that the charges which formed the basis for plaintiff's nonrenewal were false; (2) that the charges were stigmatising; and (3) that the circumstances of the public disclosure of these charges were such as to fall within the language of *Roth* and *Bishop*.

### A. Falseness of charges

■ Plaintiff has not explicitly alleged in his amended complaint that the charges given for the nonrenewal of his teaching contract were false. However, he alleges that he requested a hearing before a third party "to show that the Defendants had acted without any reason, justification or basis in fact in their decision to nonrenew plaintiff's teaching contract. . . ." This allegation implies sufficiently that the charges on which plaintiff's non-renewal was based were false. It satisfies the requirement in *Codd v. Velger*, supra.

### B. Stigmatising Effect

■ Defendants argue that the charges which were directed at plaintiff do not amount to a stigma which invades plaintiff's interest in liberty. They argue that only "unsavory character traits indicative of moral degeneration" reach the level of a stigma.

In *Roth* the Court considered two kinds of interests which may be implicated when a nontenured employee is discharged. The first is the individual's interest in "good name, reputation, honor, or integrity." The second is the individual's interest in avoiding "a stigma or other disability" that forecloses employment opportunities. The Court has not clearly defined the type of charges which infringe the second interest.[3] However, the charges set forth in the "Specification of Charges" directly impugn the teaching capabilities of a teacher and could "foreclose . . . employment opportunities." *Board of Regents v. Roth*, supra, 408 U.S. at 573, 92 S.Ct. 2701. I conclude that the charges which were directed at plaintiff were "stigmatising."

### C. Public disclosure

In *Bishop v. Wood*, the Court held that oral communication to Bishop of the

---

**3.** See *Hortonville Ed. Assoc. v. Joint Sch. Dist. No. 1*, 66 Wis.2d 469, 490–91, 225 N.W.2d 658, 669 (1975) in which the Wisconsin Supreme Court stated that charges that teachers had breached their contracts, and that they had engaged in a strike "could detrimentally affect an individual's reputation in the labor market and thereby significantly undermine his opportunities for re-employment."

grounds for his discharge could not form the basis for the claim that he had been unconstitutionally deprived of a liberty interest, since the communication had not been made public. The Court also held that grounds which were stated in writing in answer to interrogatories after litigation had commenced "[could] not provide retroactive support for his claim." 426 U.S. 348, 96 S.Ct. 2079.

Defendants contend that this case is similar to *Bishop* in that prior to the nonrenewal of plaintiff's teaching contract, the charges on which the nonrenewal was allegedly based were communicated orally in a private conference; and that only after plaintiff's contract was not renewed and only at plaintiff's insistence were the charges detailed in writing. Defendants also argue that plaintiff should not be permitted to pursue a claim which he created through his own demand for written charges.

■ In his amended complaint, plaintiff alleges that the charges upon which the Board of Education decided not to renew his teaching contract, and other documents pertinent to those charges, were placed in his personnel file and disclosed to other school districts. As distinguished from *Bishop*, this disclosure of stigmatising charges took place before litigation commenced, and without plaintiff's consent. By demanding written charges, plaintiff did not consent to dissemination of those charges to other school districts.

■ From facts alleged in the amended complaint, it appears that the stigmatising charges may have been made public at the hearings which were held by the Board of Education on July 10 and 21, August 18, and September 25, 1970. However, the complaint is silent regarding relevant details of those hearings. Construing the amended complaint most liberally to the plaintiff, it can be inferred that the charges were not made public at the Board of Education hearings, and that they were not made public prior to the time that defendants disseminated the information in plaintiff's personnel file to other school districts.

Because of the absence of facts regarding the hearings, I am not called upon to decide whether plaintiff's liberty interest would be infringed if the stigmatising charges had first been publicly disclosed at hearings which he had requested and had participated in.

I conclude that plaintiff has stated a claim for deprivation of a liberty interest without due process of law.

Upon the basis of the entire record herein, defendants' motion to reconsider, filed November 3, 1976, is denied.