NAUS, Respondent, v. JOINT SCHOOL DISTRICT No. 1 OF CITY OF SHEBOYGAN FALLS, Appellant.

*No. 75-186. Argued November 1, 1976.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 725.)

---

[29] *Norwood v. State, supra,* at 358, 246 N.W.2d at 809.

For the appellant there was a brief by *Hopp, Hodson & Powell,* and oral argument by *Alexander Hopp,* all of Sheboygan.

For the respondent there was a brief by *James L. Greenwald,* general counsel, Wisconsin Education Association Council, of Madison; and *William K. Sonnenburg* and *Rabinovitz & Sonnenburg* of Sheboygan, and oral argument by *Priscilla Ruth MacDougall* of Wisconsin Education Association Council.

DAY, J. This is an appeal from an order of the county court determining it had jurisdiction to hold a hearing to review the school district's decision through its school board, not to renew the employment contract of Mrs. Leone Naus, a teacher.[1] The court found jurisdiction

---

[1] We again call to the attention of the bar the necessity of securing a written order to preserve appellate jurisdiction, *State ex rel. Hildebrand v. Kegu,* 59 Wis. 215, 217, 207 N.W.2d 658

under the rationale of this court's decision in *Hortonville Education Assn. v. Hortonville Joint School District No. 1*, 66 Wis.2d 469, 225 N.W.2d 658 (1975). The order appealed from, and the initial briefs by the parties to this court, preceded the June 17, 1976 reversal of the Wisconsin decision by the United States Supreme Court, 426 U.S. 482, 96 S. Ct. 2308, 49 L. Ed.2d 1 (1976). We conclude the lower court erred in finding jurisdiction and therefore reverse.

Based on the limited record before this court, the facts are as follows. Mrs. Naus has been a teacher for sixteen years with the last fourteen years at the Sheboygan Falls High School.[2] She resides in the city of Sheboygan Falls. She holds Bachelor's and Master's degrees in education and has earned credits toward a doctorate. At the high school she taught journalism and English, directed forensics and handled publicity for the school system.

Under Wisconsin statutes[3] and a collective bargaining agreement with the teachers union entitled, "Certificate

(1973), which respondent argues is lacking in the instant case. The six-page discussion of law by the lower court is obviously intended to be the final ruling of the court with respect to its jurisdiction. We therefore treat it as an order. *Estate of Baumgarten*, 12 Wis.2d 212, 220, 107 N.W.2d 169 (1961); *State v. Lamping*, 36 Wis.2d 328, 337, 153 N.W.2d 23 (1967); *Barneveld State Bank v. Petersen*, 68 Wis.2d 26, 30, 227 N.W.2d 690 (1975).

[2] Though not part of the record, Mrs. Naus' 1967–1968 and 1971–1972 teaching contracts were probationary, according to her brief.

[3] "Sec. 118.22 *Renewal of teacher contracts.* . . . (2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employee at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. If no such notice is given on or before March 15, the contract then in force shall continue for the ensuing school year. A teacher who receives a notice of renewal of contract for the ensuing school year, or a teacher who does

of Agreement, 1973–1975," Mrs. Naus' contract was renewable on or before March 15, 1975. On February 10, 1975, Mrs. Naus received a "preliminary notice of considering non-renewal of contract" in letter form, signed by the president of the board of education and the superintendent of schools.

The letter set out five reasons why the board was considering non-renewal of her contract for the 1975–1976 school year: (1) failure to maintain a classroom atmosphere conducive to good learning; (2) inability to accept tasks equal to other teachers' assignments without problems resulting; (3) inability to follow simple rules and regulations that are necessary for the operation of an orderly and efficient school; (4) deteriorating teaching evaluations of classroom performance; (5) classroom use of television without lesson plan substantiation. Examples were cited illustrating three of the reasons given.

The letter then set out procedural remedies. First, school board president Joseph E. Richardson, Jr. and superintendent of schools John Brown were directed by the school board to orally advise Mrs. Naus of the particulars of the district's dissatisfaction.

Second, she was advised that pursuant to sec. 118.22 (3),[4] Stats. and Article XXI[5] of the labor contract for

not receive a notice of renewal or refusal to renew his contract for the ensuing school year on or before March 15, shall accept or reject in writing such contract not later than the folllowing April 15. No teacher may be employed or dismissed except by a majority vote of the full membership of the board. Nothing in this section prevents the modification or termination of a contract by mutual agreement of the teacher and the board. No such board may enter into a contract of employment with a teacher for any period of time as to which the teacher is then under a contract of employment with another board."

[4] "(3) At least 14 days prior to giving written notice of refusal to renew a teacher's contract for the ensuing school year, the employing board shall inform the teacher by preliminary notice in writing that the board is considering nonrenewal of the

1973–1975 she could request a private conference with the school board to discuss the matter.

Third, Mrs. Naus was advised she was entitled to a hearing before the board. She was told she could retain an attorney, present evidence and call and cross-examine witnesses. It was further stated the board would consider postponing the hearing date if she needed further time, but a decision was to be reached prior to March 15, 1975.

The letter further states,

"You are further advised that if you feel that the school board is in an adversary position with regard to this matter and you desire to have an impartial decision maker be charged with the responsibility of determining what action shall be taken, you are advised that pursuant to the Wisconsin Supreme Court decision in the case of *Hortonville Education Ass'n. et al.,* Respondents, filed February 5, 1975, you may petition any court of record in Sheboygan county to obtain a 'de novo' determination of all issues in this matter. (In such proceeding the issues shall be determined by the court without a jury unless the judge determines to call a jury and receive an advisory verdict and the court shall resolve any factual disputes and provide for a reasonable disposition of this matter.)"

---

teacher's contract and that, if the teacher files a request therefor with the board within 5 days after receiving the preliminary notice, the teacher has the right to a private conference with the board prior to being given written notice of refusal to renew his contract."

[5]   "XXI. *RENEWAL OF TEACHERS' CONTRACTS*

"A. Renewal of teachers' contracts will be as outlined in Section 118.22 of the Wisconsin Statutes. For information purposes part of the statute is listed below.

". . .

"B. The Board of Education agrees to orally advise the teacher of reasons for not renewing the contract at the time written notice of not renewing the contract for the following year has been given."

". . ."

Mrs. Naus wrote to school board president Richardson on February 13, 1975 stating she desired neither a private conference nor a hearing before the board. Furthermore, she felt the school board was in an adversary position and she did desire:

". . . to have an impartial decision maker determine the facts and what disposition should be made of the matter. Your offer to resolve in the court the question of whether my employment shall be terminated is hereby accepted."

Mrs. Naus also stated she had retained private counsel and requested the board delay giving her a notice of non-renewal until after the matter was heard by the court.

On February 24, 1975, counsel for the school district in effect withdrew the offer to settle the dispute in court, writing to Mrs. Naus' counsel that in his opinion the *Hortonville* decision contemplated a first adjudication outside of court.

On February 25, the school district was served with a petition by Mrs. Naus addressed to the judge of county court, Branch II for Sheboygan county. In it Mrs. Naus denied the allegations of the school board concerning her performance and demanded a closed hearing before the court, citing the U. S. and Wisconsin constitutions and this court's *Hortonville* decision as authority. The petition also alleged Mrs. Naus "was informed by the administration that some of the complaints were supposed to have emanated from some members of the Board of Education. . . ."

By letter dated March 10, 1975 the school district notified Mrs. Naus that in accordance with sec. 118.22, Stats., the board of education held a special meeting on March 6, 1975 at which time it voted not to renew her contract for the 1975–76 school year.

The school district then filed with the county court a "General Demurrer and Motion to Dismiss." As grounds

for the demurrer the school district argued (1) the court lacks jurisdiction over the subject matter and, (2) the petition fails to state facts sufficient to constitute a cause of action. The school district argued alternatively that if the matter is determined not to be an "action" but rather a "special proceeding," then a motion to dismiss would lie because the hearing had no basis in law. In support of this motion the district argued (1) the *Hortonville* remedy did not apply to non-renewal situations, (2) the petition did not establish due process requirements and (3) the petition did not establish the adversary position of the Board.

Acknowledging that the consent of the parties did not of itself confer jurisdiction, the lower court determined it had jurisdiction to hold a de novo hearing in a written decision dated April 25, 1975. The decision was confined to the jurisdictional question with other motions taken under advisement.[6]

The trial court treated the issue as on a motion to dismiss and characterized "this remedy" as a "special proceeding" and not an "action."[7] The court said it was dealing with a "newly created remedy" and quoted *Hortonville Education Association, supra:*

"In those situations where an employed teacher is discharged or otherwise disciplined and due process is re-

---

[6] These are motions to order respondent to renew the petitioner's teaching contract; to order compliance with a demand for a bill of particulars; to amend the petition to allege violations of the open meeting law.

[7] At the commencement of this proceeding an action was defined in sec. 260.03, Stats. 1973:

*"Action defined; special proceeding.* An action is an ordinary court proceeding by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding."

Now see §801.01(1), effective January 1, 1976, which provides that the term "action" is meant to include special proceedings unless a specific procedure in special proceedings exists.

quired, and the school board is in an adversary position, we hereby provide and direct that the dissatisfied teacher or teachers can, upon petition, obtain a de novo determination of all issues in any court of record in the county where the school district or a part of it is located. The issues shall be determined by the court without a jury, unless the judge determines to call a jury and receive an advisory verdict. The court shall resolve any factual disputes and provide for a reasonable disposition." 66 Wis.2d 498.

In *Hortonville, supra,* this court decided "the principle of fair play"[8] dictated that where a school board was involved in a labor dispute with over 80 of its striking teachers an impartial decision maker, not the board, should determine whether the conduct of the striking teachers merited their discharge. The court directed that where an employed teacher is discharged or otherwise disciplined and due process is required, and the school board is in an adversary position, the teacher could, upon petition, obtain a de novo determination of all issues in any court of record in the county where the school district or a part of it is located.[9]

Subsequently, the United States Supreme Court ruled that under the United States Constitution the school board could make the firing decision.

Upon remand, the *Hortonville* teachers moved this court to reaffirm its decision under Wisconsin law. By order dated August 23, 1976, the case was returned to the trial court for resolution of issues which were not the subject of the prior appeal. In addition this court retained jurisdiction to rule on the teachers' motion to reaffirm.

In the instant case, the lower court ruled Mrs. Naus was entitled to a de novo hearing of the sort mandated

[8] 66 Wis.2d at 493.

[9] 66 Wis.2d 498. The remedy was created pursuant to this court's responsibility to provide a certain remedy for all injuries and wrongs. See Art. I, sec. 9, Wis. Const.

by this court in its *Hortonville* decision. In so finding, it disregarded the direction in our decision that:

"The school board should make the initial determination as to the hiring or firing of one or many teachers . . . As much control as possible should be left with the school board to set policy and manage the school." 66 Wis.2d at 497, 498.

Thus, even the original *Hortonville* decision put the primary responsibility for hiring and firing with the school board.

In *Hortonville* this court found a potential for bias or partiality on the part of the school board arising in the context of the acrimonious labor negotiations to which the board was a party. The teachers had alleged their work stoppage was provoked by the school board's bad faith in the negotiations. 66 Wis.2d 475. Regardless of the actual motives of the school board, it was clear that its decision to terminate existing contracts and revoke offers for new ones was based not on an evaluation of the competency of the teachers to teach, but rather on the conclusion the work stoppage was illegal and that this constituted a serious breach of contract which merited discharge.

It was "under this factual background"[10] that this court determined the school board was not the proper body to make the discharge decision. There is no comparable factual background in this case to warrant a conclusion the school board was likely to be biased.

Even if it be assumed, as Mrs. Naus alleged in her petition, that members of the school board initiated some of the complaints against her, this did not of itself make the board biased so as to render the proffered hearing before the board intrinsically unfair.

---

[10] 66 Wis.2d 497.

In *State ex rel. Deluca v. Common Council,* 72 Wis.2d 672, 242 N.W.2d 689 (1976), this court said a biased decision maker, or a decision made under circumstances which lead to a high probability of bias, is constitutionally unacceptable. 72 Wis.2d 684.

The issue was whether the investigatory and adjudicatory functions of a city common council were so intermingled with its subsequent removal proceedings that the discharged employee-petitioner was denied due process. This court said no, adopting the analysis in *Withrow v. Larkin,* 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed.2d 712 (1975). We said,

"In Larkin, the United States Supreme Court noted that it is typical procedure for members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints, and then to participate in the ensuing hearings. The Court likened the conduct of administrative adjudicatory agencies in approving or issuing initial charges to the practice of judges in making findings of probable cause. Yet such judges are not constitutionally disqualified from hearing the case on the merits. The Court pointed out, however, that, although there is no per se disqualification because of the combining of the investigatory and the adjudicatory functions, special facts and circumstances may in a proper case impel a court to conclude that the risk of unfairness is intolerably high. In explication of this view, the Court stated, in referring to the Larkin procedures:

" 'The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position. Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is no incompatibility between the agency filing a complaint based

on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute. Here, if the Board now proceeded after an adversary hearing to determine that appellee's license to practice should not be temporarily suspended, it would not implicitly be admitting error in its prior finding of probable cause. Its position most probably would merely reflect the benefit of a more complete view of the evidence afforded by an adversary hearing.'" (P. 57) 72 Wis.2d 684, 685.

There is no indication from the present record of either actual bias or the high probability of bias in the instant case.[11] The school board's notice to Mrs. Naus that it was considering non-renewal was accompanied by a point-by-point list of the reasons it was considering that action. Each reason related to Mrs. Naus' ability as a teacher. There were no collateral reasons suggesting other motives. Mrs. Naus was advised she was entitled to a private conference with the school board to discuss the matter and in addition, to a hearing before the board where she could enlist the aid of an attorney to present evidence, cross-examine witnesses and in general, refute the charges.

Mrs. Naus chose to bypass this procedure and go directly to court.

The procedure offered by the school board gave Mrs. Naus ample opportunity to challenge its preliminary decision not to renew her contract. Her remedy under the statute is with the board.

The order appealed from is reversed, and the cause is remanded to the trial court with the direction to dismiss upon a condition that the respondent hold the in-school hearing which it offered initially.

*By the Court.*—Order reversed.

HEFFERNAN, J., took no part.

[11] *See, LeBow v. Optometry Examining Board,* 52 Wis.2d 569, 191 N.W.2d 47, 50, 51 (1971); *Kachian v. Optometry Examining Board,* 44 Wis.2d 1, 170 N.W.2d 743, 748, 749 (1969).