HORTONVILLE EDUCATION ASSOCIATION, and others, Appellants, v. HORTONVILLE JOINT SCHOOL DISTRICT No. 1, and others, Respondents.†

Supreme Court

*No. 635 (1974).—Decided January 30, 1979.*

(Also reported in 274 N.W.2d 697.)

† Motion for reconsideration denied, without costs, on March 27, 1979.

For appellants: *Friebert & Finerty* of Milwaukee.

For respondents: *Melli, Shiels, Walker & Pease, S.C.,* of Madison.

## PER CURIAM.

This case comes before us, after remand from the United States Supreme Court, on a motion by plaintiffs-appellants to reaffirm our original opinion on state rather than federal grounds, and on the motion of the defendants-respondents for summary affirmance of matters decided by the trial judge subsequent to our original opinion, and therefore not previously passed upon by us. Defendants-respondents have also objected to personal jurisdiction over them as respects these additional issues. We overrule the objection to personal jurisdiction, deny the motion to reaffirm our original opinion, and grant the motion for summary affirmance.

## THE OBJECTION TO PERSONAL JURISDICTION

In deciding the personal jurisdiction question it is necessary to review the procedural history of this case. An amended complaint filed May 31, 1974, set forth four causes of action. The first was an allegation that

the circumstances surrounding the discharge of a class of teachers represented by the Hortonville Education Association and the named plaintiffs constituted a deprivation of property and liberty without due process of law. In the second cause of action, it was alleged that a teacher who appeared before the board without representation by the association was treated differently from those who appeared before the board and were represented by the association, in that the former was offered employment opportunities and conditions of employment not offered to the latter. This was claimed to be a denial of equal protection. The third cause of action alleged a violation of the open meeting law, sec. 66.77, Stats., at a meeting which preceded the discharge of the teachers. The fourth cause of action alleged that replacement teachers hired by the defendants did not have teacher certificates and that health examinations were not required, thereby violating secs. 118.19, 118.21 and 118.25, Stats. The relief requested was a declaratory judgment that the action of the school board in firing the teachers was invalid, and ancillary injunctive relief for the purpose of enforcing that declaration. The defendants moved for summary judgment as to the first cause of action and demurred to the other three.

The trial court granted the defendants' motion for summary judgment as to the first cause of action and sustained the demurrers by orders to that effect entered on July 29, 1974. With respect to the second and fourth causes of action, leave was granted to replead. Plaintiffs took advantage of this order by a second amended complaint, setting forth the former second and fourth causes of action as the new first and second causes of action, on August 8, 1974. Judgment dismissing the first cause of action was entered on August 27, 1974.

Plaintiffs made an application on September 10, 1974 for leave to commence an original action in this court. As plaintiffs contemplated it, the original action would

serve as a substitute for appeal, removing all issues to this court. They alleged that the original action was necessary because their remedy by appeal was inadequate. The petition did not make reference to the fact that a second amended complaint had been filed. This court denied the petition on the ground that time for appeal had not yet expired, and indicated its willingness to advance the matter for a speedy determination if an appeal were taken. On October 10, 1974 a notice of appeal was served and filed. The notice stated that only the judgment dismissing the first cause of action and the order sustaining the demurrer to the third cause of action, without leave to replead, were the subjects of appeal.

On appeal, this court reversed with two justices dissenting and one concurring. *Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1*, 66 Wis.2d 469, 225 N.W.2d 658 (1975). Defendants then applied for certiorari to the United States Supreme Court, which granted certiorari and reversed, remanding the matter to us for further proceedings not inconsistent with the majority opinion. *Hortonville Joint School District No. 1 et al. v. Hortonville Education Assn., et al.*, 426 U.S. 482 (1976). Three justices of the United States Supreme Court dissented on the ground that the decision of this court should be vacated and the matter remanded without directions. After remand, plaintiffs brought their motion to reaffirm this court's original opinion on state grounds. Retaining jurisdiction of the motion, we remanded the record to the circuit court by order dated August 23, 1976, so that the issues raised by the two remaining causes of action could be adjudicated. Plaintiffs filed a third amended complaint on March 24, 1977, restating the equal protection and teacher qualification causes of action alleged in the second amended complaint. Defendants moved to dismiss both causes of action and demurred to the teacher qualification cause of action. The trial judge granted

summary judgment dismissing the equal protection cause of action and sustained the demurrer to the teacher qualification cause of action, without leave to replead.

Pursuant to the order retaining jurisdiction of plaintiffs' motion to reaffirm the original opinion, the record was again transmitted to this court. At that point defendants moved to limit the issues for consideration to those raised by plaintiffs' motion. We denied this motion by defendants, holding that instead we would consider any additional issues raised as if a motion for summary affirmance had been made.

The principal procedural problem in this case is, and always has been, that only a single declaratory judgment could be granted in this action, regardless of the number of causes of action alleged in support of a declaration. The first summary judgment was subject to the old code of procedure, having been rendered before the new code became effective on January 1, 1976. Under the old code, a judgment was defined as the final determination of the rights and duties of the parties to the action. Sec. 270.53, Stats. of 1973. An interlocutory judgment was authorized under sec. 270.54, but only where the duty or liability phase of the proceedings was concluded, leaving an issue of fact such as damages to be determined. *Aspenleiter v. William Beaudoin & Sons, Inc.*, 64 Wis.2d 390, 219 N.W. 2d 310 (1974). Thus, there could be no such thing as an interlocutory declaratory judgment.

Under the former practice, demurrer in a declaratory judgment action was authorized only upon the ground that the complaint did not state a case for declaratory judgment. If a justiciable issue was presented which was ripe for determination, demurrer did not lie. *American Med. S., Inc. v. Mutual Fed. S.&L.*, 52 Wis.2d 198, 188 N.W.2d 529 (1971). Moreover, it was not proper for a declaratory judgment to merely dismiss the complaint.

*Denning v. Green Bay,* 271 Wis. 230, 72 N.W.2d 730 (1955). Thus, the motion for summary judgment and demurrers as to the other three causes of action of the amended complaint, made by defendants and granted by the trial court, were not appropriate for the purpose of presenting the questions which were decided by the trial court and appealed to this court. Only if they were looked upon as a combination designed to produce a final declaratory judgment could they have accomplished their intended purpose. The fact that plaintiffs pleaded over when the defendants' demurrers were sustained to two causes of action destroyed the finality of the trial court's determination. If this had been brought to our attention, we would have been compelled to reverse the order sustaining the demurrer to the third cause of action of the amended complaint and vacate the judgment dismissing the first cause of action, remanding the matter to the trial court for a final resolution of all issues. Because it was not brought to our attention, and we did not recognize the problem in·the course of our deliberations, we rendered an opinion which should not have been given.

After our former decision was reversed and remanded by the United States Supreme Court with directions to have further proceedings not inconsistent with the opinion of that court, we realized for the first time that unresolved issues in the trial court precluded a final appellate determination. We were then faced with the question of how to proceed. Two options were available. First, we could reverse the order sustaining the demurrer to the third cause of action and vacate the summary judgment dismissing the first cause of action of the amended complaint, and remand the matter to the trial court for a final declaratory judgment. This would have had the effect of reopening all issues, and prolonging the case further. Second, we could retain jurisdiction of that portion of the case that was before us, and direct the

trial court to complete the determination of the remaining issues, so as to have at last a single final declaratory judgment. We chose the latter course.

Faced with the plaintiffs' failure to file a notice of appeal from the summary judgment granted by the trial court dismissing the equal protection cause of action and the order sustaining the demurrer to the teacher qualification cause of action, and faced with the motion of defendants objecting to our jurisdiction over their person because of the failure of plaintiffs to notice an appeal as to those issues, we once again have two options. First, we can again send the case back to the trial court for a single final declaratory judgment disposing of all the issues in the action. Second, we can consider all the orders and judgments, now united before us for the first time, as a single declaratory judgment, as to which review proceedings have already been had in part and as to which the participation of defendants in prior proceedings waives any objection which they may have to jurisdiction over their persons now. We have chosen the latter course.

## THE MOTION TO REAFFIRM

Plaintiffs' motion to reaffirm does not extend to the third cause of action of the amended complaint, alleging a violation of the open meeting law, sec. 66.77, Stats. Rather, it is directed to the due process claim which was the ground for the first cause of action. With respect to that claim the trial court held that the teachers' strike which commenced March 18, 1974, did not sever the relationship of employer and employee between the teachers and the school district, and that the teachers were entitled to due process procedures to protect their liberty and property interests notwithstanding that they were engaged in a strike in violation of sec. 111.70(4)(1),

Stats. of 1973. The trial court held that the notice and opportunity to be heard afforded the teachers was sufficient to satisfy due process, inasmuch as there was no dispute but that the teachers were on strike and they informed the board through counsel that they would answer no questions and did not wish individual hearings. Rather, they wanted to be treated as a group. We reversed on the ground that each teacher's individual contract for the 1973–1974 school year and contract for the following year was a property right, and that a liberty right was also involved because the grounds for termination could damage the teachers' reputations. We held that the teachers were entitled to a hearing before an impartial decisionmaker before being deprived of a property or a liberty right. We did not consider the board impartial because it had been involved in collective bargaining with the teachers. We thought that review of the board's decision by certiorari or the Wisconsin Employment Relations Commission was not a sufficient check on the board because these methods did not provide for review of the board's choice between reasonable alternatives. Therefore, we remanded the case to the trial court for a *de novo* determination of the most reasonable disposition of the matter.

The majority of the United States Supreme Court which joined in the opinion reversing us, accepted what was termed a state law decision that the teachers had property rights in continued employment. The federal majority made no comment on our decision that a liberty interest was involved. However, *Bishop v. Wood,* 426 U.S. 431 (1976), makes it clear that an interest in reputation or integrity sufficient to constitute an interest in liberty does not require a due process hearing unless it is claimed that the charges involved were false. There is no such claim in this case. It is undisputed that the teachers were in fact on strike. Therefore, no liberty

interest was involved which required a due process hearing, and we were wrong in holding to the contrary.

Despite the deference claimed for the "state law" determination of the teachers' property right in continued employment, the federal majority in reality treated the case as involving no property right. This was the correct approach, however, because we did not decide the property right question as a matter of state law. We analyzed the question as whether state statutes governing teachers' contracts extended an expectation of continued employment for federal due process purposes. We cited only federal cases, and expressly declined to reach the question whether by going on strike the teachers abandoned their property interest in continued employment. The federal majority viewed the matter differently:

"Moreover, what the teachers claim as a property right was the expectation that the jobs they had left to go and remain on strike in violation of law would remain open to them." 426 U.S. 494, 495 (1976).

Thus, the federal majority, while reaching a different conclusion, analyzed the property right issue in this case in the same manner as the trial court did when it held that the strike did not terminate the employer-employee relationship between the teachers and the school district. That was a question expressly not reached by the majority of this court, but relied on by the two dissenting justices for the purpose of showing that no property right was involved. The difference in approach between the United States Supreme Court majority and the majority of this court stems from a different view of the board in its role as a decisionmaker. This court thought the board was required to be an impartial quasi-judicial body determining first whether the striking teachers were to be disciplined and second, what was the appropriate penalty to impose. This being the board's role, it was required to make a reasoned determination whether the strike

constituted an abandonment by the teachers of their employment contracts. The United States Supreme Court majority held that the board was entitled to respond to the strike as an employer, and that federal due process did not require the board to be an impartial, quasi-judicial decisionmaker.

We recognize that in an appropriate case we can ground a due process decision on state as well as federal constitutional grounds. We have done so before, and we will do so again. However, this is not an appropriate case in which to exercise that power. A state ground for reaffirming our original opinion would require a holding that the board was not entitled to treat the teachers' strike as an abandonment of their employment. Such a holding would be inconsistent with the opinion of the United States Supreme Court majority in this case, and therefore would violate the mandate of that court. This is the exact issue upon which the majority and minority of the United States Supreme Court split. The justices of the minority did not disagree with the conclusion of the majority that due process did not require the board to be an impartial decisionmaker. Rather, the minority disagreed with the direction of the mandate that further proceedings be consistent with the majority opinion. The minority would simply have vacated and remanded without directions. Moreover, with the supposed requirement of an impartial decisionmaker removed from this case, we cannot hold that the board acted arbitrarily or capriciously or beyond its jurisdiction in discharging the teachers. Validity of discharge depends upon whether Wisconsin law requires an impartial judicial or quasi-judicial decisionmaker regardless of due process. It is clear that it does not, as we noted before in this case. The first reason is sec. 118.22(2), Stats., which gives the board the exclusive right to hire and fire a teacher.

The second reason is the mass nature of the teachers' action, taking the decision to discharge out of the realm of a case-by-case determination.

The plaintiffs have raised other issues in their motion on remand. The first is that the lack of a statutory "*de novo* review" denies them equal protection. Certiorari, if it were brought, would have afforded the plaintiffs the same protection as the statutes which they cite relating to police and fire fighters. Plaintiffs also claim that a number of their arguments were not passed upon by the trial court. Sixteen grounds were asserted in support of a motion to the trial court to vacate the proceedings conducted by the board. Some of these grounds contain allegations not made in the pleadings, and none should have been considered by the trial court because they were made in support of a motion which the court could not grant. There had been no application for certiorari, and therefore the board's decision could not be vacated and the proceedings remanded. The motion to reaffirm our original opinion in this case is denied.

## THE MOTION FOR SUMMARY AFFIRMANCE

After remand, the second amended complaint was again amended on March 24, 1977. The first cause of action of the third amended complaint contained allegations that on April 1, 1974, Mrs. Toni Stamborski, one of the teachers who received notice of disciplinary hearings, appeared before the Hortonville School Board. At that time she rejected representation by the Hortonville Education Association. Notwithstanding the fact that she had been absent from her teaching duties during the same period of time as the other teachers, the board did not discharge her but gave her a disciplinary letter and she lost five days pay. It was alleged that she was treated differently from the other teachers because she appeared

before the board without representation by the Hortonville Education Association, and this constituted a denial of equal protection to the members of the association who were discharged.

The second cause of action in the third amended complaint alleged that the board violated secs. 118.21 and 118.25, Stats. in hiring replacement teachers, as a consequence of which the actions of the board were null and void. It was also alleged that the members of the Hortonville Education Association offered to return to work on April 25, 1974, but the board refused to rehire them on the ground that they had already hired replacements. The plaintiffs claim they were unlawfully precluded from returning to their positions and engaging in their professions and consequently suffered loss of their livelihood.

The trial court decided the equal protection issue pursuant to summary judgment procedure. The record shows that Mrs. Stamborski attended the hearing scheduled for her and responded to thirty-two questions dealing with her individual situation, which the other teachers refused to do. The board's explanation for allowing Mrs. Stamborski to return to work is that she was willing to do so without the prerequisite condition of a master contract for all teachers. She resumed her teaching duties on April 8, 1974 when the schools reopened.

The other teachers were discharged and invited to apply for re-employment. One teacher, Mr. Bellaire, accepted the offer to reapply prior to April 8th. He was re-employed and resumed his teaching duties when school opened.

The undisputed facts did not make out a case of denial of equal protection. Mrs. Stamborski was treated differently because she did not insist upon a new master contract as a condition of returning to her duties. Mr. Bellaire, who abandoned his militancy prior to the reopening of school, received treatment essentially equal to that

accorded Mrs. Stamborski. Plaintiffs argue that school could have been reopened with temporary replacements without firing the plaintiffs. Even if this were true, it would not raise an inference of denial of equal protection. At most it would show that plaintiffs were fired, not for their union sympathies, but for their continued participation in the strike. As the United States Supreme Court held, the Hortonville School Board was not required to adopt the least punitive method of breaking the strike.

The trial court sustained a demurrer to the cause of action which alleged the illegal hiring of replacements on the ground that the replacement teachers were indispensable parties and had not been joined in the lawsuit. The court also ruled that there was no private right of action for violation of the statutes governing the hiring of teachers. Plaintiffs argue that they did not rely upon the statutory qualification provisions for their cause of action. They claim that these provisions were not the grounds of the cause of action, because they did not impose a duty on the school board to hire or reinstate the plaintiffs when they offered to return to work on April 25th, but that the statutes invalidate the claim of the school board that plaintiffs could not be rehired or reinstated because their positions had been filled by replacements. By this argument plaintiffs are admitting that the claim based on lack of statutory qualifications is not a separate cause of action. Rather, it is intended to show that there is no defense by the school board to a claim for reinstatement and back wages because of the alleged unlawful discharge of the teachers. Because the plaintiffs were not unlawfully discharged, they have no right to re-employment. Therefore, they have no standing to challenge the school board's reasons for refusing to re-employ them.

The judgments and orders in this case, construed to be a single declaratory judgment adjudicating the rights and duties of the parties, are affirmed.