IN THE MATTER OF the ARBITRATION BETWEEN the WEST SALEM EDUCATION ASSOCIATION & Robert M. FORTNEY & the SCHOOL DISTRICT OF WEST SALEM:

Robert M. FORTNEY and the West Salem Education Association, Appellants,

v.

SCHOOL DISTRICT OF WEST SALEM, Respondent-Petitioner.

Supreme Court

*No. 80–1447. Argued April 26, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 225.)

For the respondent-petitioner there were briefs by *Darrel A. Talcott* of West Salem, and *John Bosshard, Janet A. Jenkins, John H. Schwab, Jr.,* and *Bosshard, Sundet & Associates,* all of La Crosse, and oral argument by *John Bosshard.*

For the appellants there was a brief by *James G. Birnbaum, Ellen M. Frantz, Daniel T. Flaherty, Gregory S. Bonney, James P. Gokey* and *Johns, Flaherty & Gillette, S.C.,* all of La Crosse, and oral argument by *Mr. Birnbaum.*

Amicus curiae brief was filed by *Bruce F. Ehlke* and *Lawton & Cates* of Madison, for Council 40, AFSCME, AFL–CIO, Professional Firefighters, of Wisconsin, AFL–CIO and Wisconsin Professional Police Association.

Amicus curiae brief was filed by *James F. Clark, Michael J. Julka,* and *Isaksen, Lathrop, Esch, Hart & Clark* of Madison, for Wisconsin Association of School Boards, Inc.

DAY, J. This is a review of an unpublished decision of the court of appeals reversing an order of the circuit court for La Crosse county, Honorable William L. Reinecke, Judge, which had vacated an arbitration award in favor of Robert M. Fortney and reinstated the decision of the West Salem School Board (hereinafter Board) to

discharge Mr. Fortney. The court of appeals remanded the case to the trial court with directions to issue an order confirming the arbitration award. We affirm the court of appeals.

The issue in this case is whether arbitrators appointed pursuant to a grievance procedure contained in a collective bargaining agreement could hold a *de novo* factual hearing to determine whether just cause existed for a school board to terminate a teacher, where the discharge decision was based on the findings and recommendation of a factfinder appointed by the Board. The Board argues that the arbitrator could only undertake a *certiorari* review of the record established at the hearing initiated by the Board and had no power to hold a *de novo* hearing. We hold that the arbitrators' interpretation of the collective bargaining agreement as permitting a *de novo* hearing is reasonable and does not unlawfully infringe upon the powers of the school board. We therefore affirm the decision of the court of appeals which reinstated the arbitrators' award.

Robert M. Fortney was employed as a teacher for the School District of West Salem from September, 1971, through August 20, 1979. In 1979, the Board received complaints by some students and parents that Mr. Fortney was making inappropriate statements in class. The Board investigated those complaints and, on March 5, 1979, informed Mr. Fortney that it proposed to discharge him. The Board appointed Attorney John Langer to conduct a fact finding hearing to determine whether the allegations against Mr. Fortney were true and, if so, warranted discharge. Mr. Fortney agreed to participate in the hearing, but informed the Board that he was specifically retaining his rights under a collective bargaining agreement (hereafter "agreement") which was then in effect between the School District of West Salem and the

West Salem Education Association (hereinafter the "Union").

Mr. Langer conducted fact finding hearings on May 30 and June 18, 1979, concerning eleven allegations of improper conduct by Mr. Fortney. On August 17, 1979, Mr. Langer issued findings of fact sustaining nine charges against Mr. Fortney and recommended that he be discharged. The school board adopted those findings and recommendations and discharged Mr. Fortney on August 20, 1979. That same day Mr. Fortney invoked his rights under the agreement and filed a grievance against the Board's action.

The parties agreed to waive the preliminary steps of the grievance procedure and selected arbitrators as provided in the agreement. This arbitration panel conducted hearings on October 22, 23 and 24, and November 27 and 28, 1979.

The arbitration panel interpreted the agreement as permitting a full factual hearing on the nine charges against Mr. Fortney that were found to have occurred by Mr. Langer and adopted by the Board as the basis for discharging Mr. Fortney. The arbitration panel further held that the Board was bound by the findings and recommendations upon which it based its discharge of Mr. Fortney and so limited proof to those matters. Forty-nine witnesses testified at the hearings conducted by the arbitration panel.

On April 2, 1980, the arbitration panel, by a vote of two to one, held that of the nine charges of misconduct against Mr. Fortney, three never occurred, three constituted proper teaching methods, and three, while reflecting poor judgment by Mr. Fortney, did not justify discharge. The arbitrators ruled that no just cause existed for Mr. Fortney's discharge and ordered him reinstated with back pay.

On May 9, 1980, the Board moved the circuit court for La Crosse county to vacate the award. On May 29, 1980,

Mr. Fortney petitioned the circuit court for La Crosse county to confirm the award. A hearing was held before Honorable William L. Reinecke. On July 11, 1980, Judge Reinecke overturned the arbitration decision and vacated the award on the ground that the arbitrators had exceeded their authority in conducting a *de novo* rather than a *certiorari* hearing as to whether just cause existed for the discharge. The court then reviewed the record and concluded that the Board's decision to discharge Mr. Fortney was supported by credible evidence and was not arbitrary and capricious. The court affirmed the Board's decision to discharge Mr. Fortney.

Mr. Fortney appealed to the court of appeals which reversed, holding that the arbitrators had acted within the scope of their authority, and remanded the case to the trial court with directions to confirm the arbitration award. The Board petitioned this court for review of the court of appeals decision. The petition was granted.

At issue in this case is whether the arbitrators exceeded their authority by interpreting the collective bargaining agreement to permit a *de novo* hearing on whether just cause existed to discharge Mr. Fortney, where a fact finding hearing had already been held concerning the propriety of the discharge. The arbitrators' decision should be vacated if that decision does not follow from the language of the collective bargaining agreement, is inconsistent with or violative of a statutory provision, or is incompatible with the United States or Wisconsin Constitutions. We hold that the decision and award is consistent with the collective bargaining agreement and applicable statutory and constitutional provisions and therefore affirm the court of appeals decision.

An arbitration award is presumptively valid and the court exercises only a supervisory role in reviewing an arbitration award. *Professional Police Ass'n. v. Dane County,* 106 Wis. 2d 303, 306–07, 316 N.W.2d 656 (1982). As

this court stated in *Oshkosh v. Union Local 796–A,* 99 Wis. 2d 95, 102–03, 299 N.W.2d 210 (1980) :

"The law of Wisconsin favors agreements to resolve municipal labor disputes by final and binding arbitration. An arbitrator's award is presumptively valid, and it will be disturbed only where invalidity is shown by clear and convincing evidence. . . .

"The parties bargain for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law."

Despite this policy of deference to arbitration decisions, a court may vacate the decision and award in cases of misconduct by arbitrators, where it evinces a perverse misconstruction of the collective bargaining agreement, or if it is illegal or violates strong public policy. *Professional Police Ass'n. v. Dane County,* 106 Wis. 2d at 308.

The Board argued before the trial court that the award should be vacated due to the misconduct of two of the arbitrators. The trial court found that no such misconduct occurred, and the Board neither appealed that ruling nor argued before this court that the award should be overruled due to any arbitrator's misconduct.

Because the arbitrator's power derives from the collective bargaining agreement, the decision and award must draw its authority from that agreement. *Milwaukee Police Asso. v. Milwaukee,* 92 Wis. 2d 145, 158, 285 N.W. 2d 119 (1979). The applicable provisions of the collective bargaining agreement are as follows :

"ARTICLE ONE: *NEGOTIATION AGREEMENT.* . . . C. *BOARD SECURITY.* It is recognized that the board has and will continue to retain the rights and responsibilities to operate and manage the school system and its programs, facilities, properties and activities of its employees; authorized by the State Statutes including but not exclusive of the following: . . .

"21. The application of the above statutes, will not be used in any attempt to diminish employee rights under 111.70 (MERA).

"ARTICLE III [THREE]: *GRIEVANCE PROCEDURE. . . . C. PROCEDURE. . . . 4. Level Four.* If the decision of the Board is not satisfactory to the teacher or Welfare Committee, the grievance may be submitted to arbitration before an impartial arbitrator selected by the parties. The arbitrator to be selected in the following manner: The employer and the employee shall each appoint a member of the panel and shall notify the other of the name of his appointee to the Board within five (5) days of receipt of the written appeal. These two representatives shall meet in an attempt to select an impartial arbitrator. Failing to do so, they shall, within fifteen (15) days of the appeal request The Wisconsin Employment Relations Commission to submit a list of five names for their consideration. The employer and the employee representative shall determine by lot the order of elimination and thereafter each shall, in that order, alternately strike a name from the list, the fifth and remaining name shall act as the arbitrator.

"The arbitrator so selected will confer with the representatives of the Board and the Association and 'hold hearings' promptly and will issue his decision on a timely basis. The arbitrator's decision will be in writing and will set forth his findings of fact, reasoning and conclusions of the issues submitted. The arbitrators will be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this agreement. Both parties agree to be bound by the award of the arbitrator and agree that judgment thereon may be entered in any court of competent jurisdiction.

"Each party shall bear the expenses of its legal representatives in this hearing. The fees and expenses of the arbitrator shall be shared equally by the parties." (emphasis added).

"ARTICLE SEVEN. *WORKING CONDITIONS. . . .* D. *TEACHER EVALUATION. . . .* 3. No teacher shall be disciplined or reprimanded without just cause and approval of the administration."

Pursuant to sec. 118.22(2), Stats. 1977, school boards have the exclusive power to hire and fire teachers:

"118.22. **Renewal of teacher contracts.** . . . (2) On or before March 15 of the school year during which a teacher holds a contract, the board by which the teacher is employed or an employe at the direction of the board shall give the teacher written notice of renewal or refusal to renew his contract for the ensuing school year. . . . No teacher may be employed or dismissed except by a majority vote of the full membership of the board."

One of the purposes of the statute is to make it clear that hiring and firing of teachers cannot be done by school principals or superintendents but must be done by the school board.

This power is not, however, wholly unrestricted. The decision to discharge must be made in a way which protects the teacher's constitutional right to due process. *Hortonville Ed. Asso. v. Joint School Dist. No. 1*, 87 Wis. 2d 347, 274 N.W.2d 697 (1979); *Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1*, 66 Wis. 2d 469, 489–91, 225 N.W. 2d 658 (1975), *rev'd on other grounds*, 426 U.S. 482 (1976). Second, the power to discharge teachers, like other statutory duties of the Board pertaining to employment relations, may be limited by the provisions of a collective bargaining agreement entered into by the Board and a union representing teachers pursuant to the Municipal Employment Relations Act (MERA) secs. 111.70–111.77, Stats. 1977. *Richards v. Board of Education*, 58 Wis. 2d 444, 460a–460b, 206 N.W.2d 597 (1973).

The trial court correctly held that the fact finding procedure conducted by Mr. Langer sufficiently protected Mr. Fortney's constitutional due process rights. However, Mr. Fortney had additional rights under the collective bargaining agreement.

While school boards are vested by statute with the primary responsibility for school district management, *see*

chs. 118 and 120, Stats. 1977, they also have the power, pursuant to sec. 111.70, Stats., to limit their statutory powers by means of a collective bargaining agreement entered into with a Union composed of their employees.[1]

[1] Applicable provisions of sec. 111.70, Stats., include:

"111.70 **Municipal employment.** (1) DEFINITIONS. As used in this subchapter:

"(a) 'Municipal employer' means any city, county, village, town, metropolitan sewerage district, school district, or any other political subdivision of the state which engages the services of an employe and includes any person acting on behalf of a municipal employer within the scope of his authority, express or implied. . . .

"(d) 'Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement. The duty to bargain, however, does not compel either party to agree to a proposal or require the making of a concession. Collective bargaining includes the reduction of any agreement reached to a written and signed document. The employer shall not be required to bargain on subjects reserved to management and direction of the governmental unit except insofar as the manner of exercise of such functions affects the wages, hours and conditions of employment of the employes. In creating this subchapter the legislature recognizes that the public employer must exercise its powers and responsibilities to act for the government and good order of the municipality, its commercial benefit and the health, safety and welfare of the public to assure orderly operations and functions within its jurisdiction, subject to those rights secured to public employes by the constitutions of this state and of the United States and by this subchapter. . . .

"(2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, . . .

"(3) PROHIBITED PRACTICES AND THEIR PREVENTION. (a) It is a prohibited practice for a municipal employer individually or in concert with others: . . .

The Board entered into such an agreement with the Union.

Article One of the collective bargaining agreement reserved to the Board all of its statutory powers. However, Article I, clause 21, expressly states that the statutes outlining the Board's powers "will not be used in any attempt to diminish employee rights under § 111.70 (MERA)." While sec. 118.22(2), Stats., is not among the statutory powers expressly reserved by the agreement, we conclude that the Board did not surrender its control over teacher employment by its failure to refer to that statute. Consistent with this, we conclude that, pursuant to clause 21, sec. 118.22 may not be used to diminish employes' rights under MERA.

MERA authorizes a municipal employer and a collective bargaining unit representing municipal employes to bargain and reach a binding agreement on "wages, hours and conditions of employment." Dismissal of employes,

"4. To refuse to bargain collectively with a representative of a majority of its employes in an appropriate collective bargaining unit.

"5. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them.

"(6) DECLARATION OF POLICY. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter."

and establishment of a grievance procedure pertaining thereto, was held by this court to be within the proper scope of collective bargaining in *Richards*, 58 Wis. 2d at 460a–460b.

Article Seven, section 6, clause .3, of the agreement between the Union and the Board states that a teacher will not be "disciplined" without "just cause and the approval of the administration." The arbitration panel, the trial court and the court of appeals all interpreted discharge of an employee to fall within the concept of "discipline." We agree with that interpretation.

The parties agree that the just cause standard is binding on the Board. The dispute is over who determines whether just cause exists. In entering into the agreement, the Board limited its statutory power to discharge teachers by agreeing it would only discipline a teacher "with the approval of the administration." It further agreed that it would not discipline or reprimand a teacher "without just cause."

The Board argues, and the trial court held, that this determination is exclusively reserved to the Board by sec. 118.22, Stats., and the collective bargaining agreement. While the discharged employee is entitled to file a grievance over the Board's action, review is limited to whether the Board's decision that just cause for discharge exists is supported by any credible evidence or was not arbitrary and capricious. According to the Board, such review is limited to the factual record relied upon by the Board in reaching the decision to discharge Mr. Fortney.

Mr. Fortney argues, and the court of appeals held, that if a teacher contends that just cause did not exist for his discharge, he is entitled to file a grievance pursuant to the procedures set forth in Article III of the agreement. An arbitration panel appointed pursuant to the grievance procedure must determine whether just cause for discharge existed in order to resolve the grievance. Because

the language in the agreement is vague and indefinite as to exactly what procedures should be used to arrive at that determination, it is within the province of the arbitration panel, as the interpreter of the contract language, to devise such procedures as it considers necessary to reach a decision, as long as those procedures are compatible with the contract language and do not violate the law. Mr. Fortney argues that the conclusion of the arbitration panel that a *de novo* factual hearing was required to determine whether just cause existed for the discharge is a reasonable one under the contract, violates no law, and therefore must be affirmed.

In *Dehnart v. Waukesha Brewing Co.*, 17 Wis. 2d 44, 51, 115 N.W.2d 490 (1962), this court outlined the limited scope of judicial review of arbitration decisions:

"While this court may disagree with the interpretation of the contract reached by the arbitrator, we will not substitute our judgment for that of the arbitrator. The parties contracted for the arbitrator's settlement of the grievance and that is what they received.

"In *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567, 80 Sup. Ct. 1343, 1346, 4 L. Ed. (2d) 1403, it is stated:

" 'The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.' "

Deference to arbitration decisions is particularly important in the area of public employment, where binding arbitration is set forth in MERA as an aid to labor peace. In *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.

2d 94, 112–13, 253 N.W.2d 536 (1977), which involved an arbitration decision resolving a dispute between a school board and a teacher covered under a collective bargaining agreement, this court stated:

"The court has no business weighing the merits of the grievance. It is the arbitrators' decision for which the parties bargained. In *Dehnart v. Waukesha Brewing Co., Inc.*, 17 Wis. 2d 44, 115 N.W.2d 490 (1962), this court adopted the *Steelworkers Trilogy* teachings of the court's limited function. The court's function is limited to a determination whether there is a construction of the arbitration clause that would cover the grievance on its face and whether any other provision of the contract specifically excluded it. . . .

"Our adherence to the *Trilogy* is in keeping with the strong legislative policy in Wisconsin favoring arbitration in the municipal collective bargaining context as a means of settling disputes and preventing individual problems from growing into major labor disputes. Secs. 111.70(3)(a) 5, 111.70(6), Stats.; *Local 1226 v. Rhinelander*, 35 Wis. 2d 209, 216, 151 N.W.2d 30 (1967); *Teamsters Union Local 695 v. Waukesha County*, 57 Wis. 2d 62, 69, 203 N.W.2d 707 (1973)."

We therefore must uphold the arbitrators' decision as long as it is within the bounds of the contract language, regardless of whether we might have reached a different result under that language, and does not violate the law.

Collective bargaining agreements arrived at under MERA, and statutes related to matters contained in such agreements, are to be harmonized wherever possible. *Professional Police Ass'n*, 106 Wis. 2d at 316–17; *Glendale Prof. Policemen's Asso. v. Glendale*, 83 Wis. 2d 90, 103–04, 264 N.W.2d 594 (1978). We conclude that harmonizing the collective bargaining agreement provisions with the Board's power to discharge set forth in sec. 118.22 (2), Stats., leaves the Board with the exclusive right to discharge an employe, but requires that just cause exist for the discharge. If the employe contends there was no

just cause for discharge, he may process a grievance through the procedure contained in the agreement. If that grievance goes to arbitration, the arbitrators, under the terms of the agreement, may make an independent determination of whether there was just cause for the discharge, relying on whatever procedures they deem necessary to reach that determination. If the parties disagree with the procedure employed by the arbitrators, their remedy is to change the language of the agreement. In view of the broad powers of contract interpretation vested in arbitrators, their interpretation of the vague language governing arbitration procedure contained in this agreement should be upheld as the parties' bargain.

The Board and the trial court gave a great deal of significance to the fact that the Board authorized the fact finding procedure carried out by Mr. Langer prior to arriving at its decision to discharge Mr. Fortney. While such a procedure was sufficient to protect Mr. Fortney's constitutional right to due process,[2] it does not prevent Mr. Fortney from pursuing his additional rights under the collective bargaining agreement.

The agreement contains a step-by-step procedure for the processing of grievances. The proceedings conducted by Mr. Langer are not a substitute for those procedures. Mr. Fortney's counsel stated, in a letter to the Board, that while Mr. Fortney was willing to participate in the fact finding process conducted by Mr. Langer, he was expressly reserving his right to invoke the contractual grievance procedure if the Board took any action against him. When the subject of the "just cause" standard for discharge came up at the hearing, both Mr. Langer and counsel for the Board stated that the language of the agreement was irrelevant to that hearing. At the commencement of the hearing held June 18, 1979, Mr. Langer expressly stated:

---

[2] *See, Hortonville*, 87 Wis. 2d at 397; *Naus v. Jt. S.D. No. 1, Sheboygan Falls*, 76 Wis. 2d 104, 111–12, 250 N.W.2d 725 (1977).

"I don't propose to construe this contract and apply the contract language at this point. I believe that's something that is a province of another tribunal."

We recognize that public policy militates in favor of maintaining a high degree of local control over educational decisions. Vesting broad authority in local school boards is a proper way of fulfilling this goal. Our decision in this case furthers that policy, recognizing and giving effect to provisions of a collective bargaining agreement voluntarily negotiated and agreed to by the Board and a Union representing employes of the local school district. While the Board is given certain powers in chs. 118 and 120, Stats., MERA also grants the Board the authority to modify those statutory powers, where a school board deems this to be advantageous in the maintenance of labor peace, by means of a collective bargaining agreement. Obviously, in the future, the Board may seek to modify the provisions at issue here through the collective bargaining process.

An argument that the arbitrators' decision should be vacated on constitutional grounds is urged upon us by the Wisconsin Association of School Boards, Inc., (hereinafter WASB) appearing as amicus curiae. This argument relies on our recent decision in *Professional Police Ass'n. v. Dane County*, 106 Wis. 2d 303, where we held that an arbitration decision will be vacated if it enforces a provision in a collective bargaining agreement which violates the Wisconsin Constitution, *Professional Police Ass'n.*, 106 Wis. 2d at 315. WASB argues that Article X, sec. 1, of the Wisconsin Constitution reserves certain powers to school boards,[3] and that the collective bargaining agreement, as construed by the arbitrators, violates this provision, requiring that the decision be vacated.

---

[3] "Article X. EDUCATION. Superintendent of Public Instruction. SECTION 1. [As amended Nov. 1902] The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law."

This case, however, is a far different one than was before this Court in *Professional Police Ass'n.* That case involved a constitutional provision providing for the office of sheriff. Prior decisions of this court held that the sheriff, under common law, had certain powers and duties in his relationship to the courts which were incorporated into the constitution. The sheriff cannot be divested of those powers and duties by statute. In *Professional Police Ass'n.*, this court held that the common law powers and duties of the sheriff could likewise not be limited or abrogated by a collective bargaining agreement entered into by a county and a union representing deputy sheriffs. *Professional Police Ass'n.*, 106 Wis. 2d at 315.

The provision at issue here, however, is not one which incorporates an ancient common law office, possessing defined powers and duties, into the constitution. Public instruction and its governance had no long-standing common law history at the time the Wisconsin Constitution was enacted. Furthermore, Article X, sec. 1, explicitly provides that the powers and duties of the school superintendent and other officers charged by the legislature with governing school systems "shall be prescribed by law." Because the constitution explicitly authorized the legislature to set the powers and duties of public instruction officers, Article X, sec. 1 confers no more authority upon those officers than that delineated by statute. Therefore, consistent with our holding that the arbitrator's decision and award violates no statutory provision relating to the powers and duties of the Board, we hold that it does not violate the Wisconsin Constitution.

In its petition for review the Board argues that when the arbitrators decided to hold a *de novo* hearing, they should have permitted the Board to bring in new charges against Mr. Fortney in addition to the charges that provided the basis for his discharge by the Board. This the

arbitrators refused to do. "The manner of conducting the arbitration proceeding after the arbitrator is selected and until the award is issued is left largely within the control of the parties and the arbitrator." *Layton School of Art and Design v. WERC,* 82 Wis. 2d 324, 343 n. 18, 262 N.W.2d 218 (1978).

We quote with approval the following language by the court of appeals in this case upholding the procedure adopted by the arbitrators:

"The arbitrators' limitation on the evidence to be introduced was reasonable. When the school board adopted the hearing examiner's findings, it made clear that Fortney's discharge was based on the nine charges found substantiated by the examiner, and that the other charges would not warrant discharge even if true. Evidence relating to other instances of misconduct was not relevant to the charges for which Fortney was discharged. The arbitrators acted reasonably in not permitting the school board to lodge new charges against Fortney at the arbitration hearing when they did not form the basis for his discharge." (Slip Op. at 12–13).

We hold that the decision of the arbitrators to limit the scope of the *de novo* hearing to the specific charges for which the Board discharged Mr. Fortney was proper under the contract.

In summary, we hold that the decision by the arbitration panel to conduct a *de novo* hearing as to whether just cause existed to discharge Mr. Fortney, limited to the charges upon which the Board issued its discharge decision, followed by the conclusion that no just cause existed, was within the arbitrators' authority. The arbitrators' decision did not reflect a perverse misconstruction of the terms of the collective bargaining agreement nor was it violative of any statutory or constitutional provision. We therefore affirm the Court of Appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

WILLIAM G. CALLOW, J. (*dissenting*). I disagree with the majority's determination that the arbitrators' decision to conduct a de novo hearing as to whether the Board had just cause was within the scope of the arbitrators' authority. Because I believe the only reasonable interpretation of the applicable statutes with the collective bargaining agreement limits the arbitrators' review to that record before the Board, I dissent.

Article X, sec. 1, of the Wisconsin Constitution provides that "[t]he supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law." This section is implemented in part by sec. 118.22 (2), Stats., which provides: "No teacher may be employed or dismissed except by a majority vote of the full membership of the [school] board."

The parties agree that the collective bargaining agreement: (1) preserves the statutory right of the Board; (2) declares the arbitrators are without power to render a decision which calls upon the arbitrators to commit an act which is prohibited by law; and (3) limits the Board's actions by prescribing that "a teacher will not be 'disciplined' without 'just cause and the approval of the administration.' " *Supra,* at 177.

I agree with the majority's conclusion that "harmonizing the collective bargaining agreement provisions with the Board's power to discharge set forth in sec. 118.22 (2), Stats., leaves the Board with the *exclusive right to discharge* an employe, but requires that just cause exist for the discharge." *Supra,* 179 (emphasis added). I disagree, however, with the majority's conclusion that "the arbitrators, under the terms of the agreement, may make an independent determination of whether there was just cause for the discharge, relying on whatever procedures they deem necessary to reach that deter-

mination." *Id.* In my opinion, such a construction of the collective bargaining agreement impermissibly substitutes the arbitrators for the Board rather than having the arbitrators review the sufficiency of just cause within the Board's exclusive power to discharge an employee on a finding of just cause.

The majority emphasizes the broad powers of contract interpretation vested in the arbitrators, *id.,* at the expense of the broad control reserved by the School Board. *See Hortonville Education Asso. v. Joint School District No. 1,* 66 Wis. 2d 469, 498, 225 N.W.2d 658 (1975), *rev'd.,* 426 U.S. 482, 496 (1976). The majority believes its decision recognizes and furthers the Board's control by giving effect to the collective bargaining agreement "voluntarily negotiated and agreed to by the Board." *Supra,* 181. The majority then concludes "[o]bviously, in the future, the Board may seek to modify the provisions at issue here through the collective bargaining process." *Id.* I submit that the majority incorrectly infers that the Board waived any limitation on the scope of the arbitrators' review by failing to specifically provide that the arbitrators' review was limited to an evaluation of the record considered by the school board. The Board, as an elected public body, is entitled to have its findings and actions viewed in light of a presumption of regularity and propriety. By deciding to determine the facts *de novo,* the arbitrators ignored this presumption and forced the Board to prove to the arbitrators that which should have been presumed.

The majority's approval of the arbitrators' de novo hearing severely undercuts the Board's exclusive power to discharge an employee and essentially turns over the Board's authority to the arbitrators. As the trial judge determined: "[The arbitrators] substituted [their] decision for that of the Board. This court finds such sub-

stitution to be improper and constitutes a manifest disregard of the law."

The trial court drew a pertinent analogy to administrative law and the scope of judicial review of decisions of state administrative agencies:

"This court's finding regarding the proper function of the arbitrations herein is supported by the law governing review of decisions of state administrative agencies. That law clearly states that it is the public policy of this state that review of any agency's decision should not be a de novo review, but rather a review to determine whether the agency had a reasonable basis for finding as it did. The law also states that a court is not to substitute its opinion for that of the agency. Hence, review must be in a certiorari posture.

"Although this court is not here dealing with an agency of the state, this court believes that the laws stated above express the same public policy which should apply in this case. That policy, as expressed by the Legislature, is that courts should only have limited review of agency decisions. Similarly, arbitrators should have only limited review of the decisions of a school board."

The trial court then drew an analogy between the scope of the arbitrators' review of the Board's decision and the appellate review process with persuasive policy reasons for construing the processes the same:

"This Court is of the opinion that one rule that is adhered to regularly by appellate bodies, provides that the trial strategy chosen by counsel, whether in a civil or criminal case, is binding. When the counsel chooses to call or not call a witness, chooses to cross-examine or not cross-examine a witness, chooses to introduce an exhibit or not introduce an exhibit, he chooses a trial strategy. An appellate court will not remand a case for a trial de novo, and allow the counsel a new kick at the cat, when the reason for reversal is a choice of strategy. The attorney in such a case is stuck with his record and so it is here. There is no doubt that both parties to litigation would be better prepared to present their cases after re-

ceiving an appellate decision on their initial efforts. It would be horrendous if in every appeal, the appellate court held a trial de novo and reconsidered the entire case to arrive at a new decision. In the instant case, counsel for the parties presented certain evidence to the fact-finder, Attorney John Langer, and in so doing, chose a trial strategy. This court will not look beyond the record there made and the strategy there chosen and consider evidence which was not presented to the fact-finder but which was subsequently presented to the arbitration panel."

The Wisconsin Association of School Boards, Inc., in its amicus curiae brief, persuasively argues that a *de novo* fact finding arbitration hearing increases the possibility of protracted litigation and unnecessary expense. Providing for *de novo* review reduces the grievant's incentive to fully present his case to the Board which, of course, reduces the integrity of the proceedings before the school board.

The parties agree that the school board acted impartially and preserved all statutory rights. Any review of whether the Board had just cause to discharge Mr. Fortney must, of necessity, be based upon that evidence which was before the Board in its record. It is inconceivable to me how one can evaluate whether the Board acted with just cause if evidence and testimony not known by the Board is used to make that determination. While post-hearing testimony may tend to support or contravene whether Mr. Fortney should have been discharged, this is something quite different from whether the Board's actions were taken with just cause. It is only the latter which is before the arbitrators on review.

Allowing, as was done in the instant case, posthearing submission of evidence defeats the very purpose of the original hearing and denies the Board an opportunity to reach a decision on a complete record. Expanding review of the Board's determination of just cause beyond the

parameters of that record which was before it contravenes notions of fundamental fairness to all parties involved. The majority's decision renders the Board's hearing a nullity. The arbitrators have been given more and broader powers than a circuit court, a clearly anomalous result.

The Wisconsin constitution and statutes clearly set forth a recognition of the importance attached to the authority of a school board to determine who shall teach our children. The importance of the Municipal Employment Relations Act, sec. 111.70, Stats., is also significant. Harmonizing the two statutes leads to the obvious conclusion that the Board and the Union have bargained for an arbitration review of the adequacy of the just cause for discharge determination made by the Board on the record before the Board. The majority opinion frustrates the Board's authority by permitting the arbitrators to decide the just cause issue on a record different from that available to and used by the Board in reaching its decision. Therefore, the arbitrators replace rather than review the Board. Accordingly, I dissent.

I am authorized to state that Justice LOUIS J. CECI joins in this dissenting opinion.